[Civ. No. 31107. Second Dist., Div. Four. Aug. 22, 1967.]

BRUNZELL CONSTRUCTION CO., INC. OF NEVADA, Plaintiff and Respondent, v. HARRAH'S CLUB, Defendant and Appellant.

766

Milo V. Olson for Defendant and Appellant.

Leon J. Garrie for Plaintiff and Respondent.

FOX, J.*—This litigation arose out of a contract (and related matters) between Brunzell Construction Co., Inc. of Nevada (herein referred to as Brunzell) and Harrah's Club for the construction of a casino in Reno, Nevada. Approximately a month after the instant action was filed, Harrah's Club filed an action in Reno against Brunzell and Glens Falls Insurance Company (as surety). These two lawsuits ever since have been in active status. The current struggle is the determination as to whether the litigation shall be tried in Los Angeles or in Reno.

The main appeal[1] in this case is by Harrah's Club from a preliminary injunction of the Los Angeles Superior Court (October 29, 1965) restraining Harrah's Club from prosecuting the Nevada case against Brunzell and its surety. In its Los Angeles suit, filed June 11, 1962, Brunzell named as defendants, in addition to Harrah's Club, William C. Wagner, the architect, Robert Raimist, who worked for Wagner, Dames & Moore, a copartnership, Vernon A. Smoot, Trent R. Dames, William W. Moore, William W. Brewer, Jr., and Le Roy Crandall, soil engineers, John A. Martin, structural engineer, William Harrah, Harrah's South Shore Corporation and Glens Falls Insurance Company.

On June 20, 1962, before Harrah's Club filed the Nevada action (July 24, 1962), Harrah's Club and Harrah South Shore Corporation were served with copies of summons and complaint in the Los Angeles action by delivering to and leaving with Ralph T. Lui a copy of said documents; Mr. Lui

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]There is an additional appeal which will be considered later.

being the statutory agent for Harrah South Shore Corporation. William F. Harrah is the sole stockholder of Harrah's Club and Harrah South Shore Corporation. The officers and directors of the two corporations are identical.

On January 23, 1963, pursuant to court order, a copy of the first alias summons and a copy of the order made on January 22, 1963, by the Los Angeles Superior Court, and a copy of the complaint were served on Harrah's Club by serving Frank M. Jordan, Secretary of State, by handing to and leaving with Ralph R. Martig, deputy thereof, a copy of each of said documents.

Harrah's Club made a motion in the Los Angeles case to quash, set aside and vacate the service of summons and complaint made upon it. The trial court made an order granting the motion. Brunzell appealed. The order quashing service on Harrah's Club was reversed. The complaint in the Los Angeles action is so well summarized in the appellate court opinion (*Brunzell Constr. Co., Inc.* v. *Harrah's Club*, 225 Cal.App.2d 734, 735-737 [37 Cal.Rptr. 659]) that we quote it at length:

"The complaint filed on June 11, 1962, sets forth among other things that plaintiff (hereinafter sometimes referred to as Brunzell), a Nevada corporation, on January 9, 1962, made a written contract with Harrah's Club, a corporation, for the construction of a casino building in Reno, Nevada. Several other defendants are joined in the action . . . [they are identified *supra*].

"It is stated in the complaint (and admitted in the answer to interrogatories by William F. Harrah) that William Harrah is the sole stockholder of both Harrah's Club, a Nevada corporation, and Harrah's South Shore Corporation, a California corporation, and that the officers and directors of the two corporations are identical.

"The first cause of action is for fraud and misrepresentation against all of the defendants with the exception of Glen Falls Insurance Company. There are set out certain misrepresentations appearing in the contract documents which were prepared in Los Angeles. The second cause of action is against Harrah's Club, William Harrah, Harrah's South Shore Corporation, and some fictitious defendants and therein it is alleged that there was a breach of contract evidenced by the same documents referred to in the first cause of action. The third cause of action is against William C. Wagner, the architect, Robert Raimist, the architect's employee, Dames &

Moore, a partnership, Vernon A. Smoot, Trent R. Dames, William W. Moore, William W. Brewer, Jr., Le Roy Crandall, soils engineers, John A. Martin, structural engineer, and various fictitious defendants. It is therein alleged that the said defendants negligently created and prepared the contract documents including the plans and specifications and that plaintiff was damaged as a proximate result of such negligence. It is alleged that the 'contract documents are defective, unfit, inaccurate, incomplete, self-contradictory and unsuitable for the purpose for which they were intended. . . .' The fourth cause of action is against the architect defendants and certain fictitious defendants for tortiously interfering with the contract between plaintiff and Harrah's Club. The fifth cause of action is against Harrah's Club, William Harrah, Harrah's South Shore Corporation and certain fictitious defendants. It is therein alleged that said defendants refused to make payments for stockpiled materials all to the end that plaintiff would thereby be weakened and by economic compulsion be forced to abandon the casino contract. The sixth cause of action is against all defendants with the exception of Glen Falls Insurance Company and therein it is alleged among other things that there was a breach of an express warranty with reference to the sufficiency of the contract documents. The seventh cause of action is against Harrah's Club, William Harrah, Harrah's South Shore Corporation, Glen Falls Insurance Company, and certain fictitious defendants and seeks among other things a determination of the liability of plaintiff and the named defendants with reference to a surety bond issued to Harrah's Club with Glen Falls Insurance Company as the surety.

"It is further alleged that Dames, Moore, Brewer, Crandall, Smoot, Martin, Raimist and Wagner are residents of Los Angeles County. Harrah's South Shore Corporation has admitted that it is a California corporation, and Wagner, Dames, Smoot and (in effect) John Martin admit that they are residents of Los Angeles County." (Hearing denied.)

In the course of its opinion reversing the order quashing service on Harrah's Club, the court stated (p. 744) : 'It is crystal clear that Harrah's South Shore Corporation is nothing but an *alter ego,* an alias, a branch, a business conduit or an instrumentality of Harrah's Club to do in California what Harrah's Club otherwise could not do."

After various law and motion proceedings in the Nevada case, Harrah's Club filed in the Nevada court on February 20,

1963, a motion for preliminary injunction enjoining Brunzell, its officers, agents, etc., pending the final determination of the Nevada action, from proceeding against Harrah's Club, its agents and officers, in the action filed by Brunzell against Harrah's Club and others in the Superior Court of Los Angeles County. Brunzell countered by moving the Nevada court for a stay of the Nevada action.

On August 23, 1963, apparently relying on the erroneous decision of the Los Angeles County Superior Court quashing service of process upon Harrah's Club and therefore holding that the California court had no jurisdiction over Harrah's Club, the Nevada trial court granted the motion of Harrah's Club for an order enjoining Brunzell from proceeding against Harrah's Club in California. The Nevada court denied Brunzell's motion for a stay of the Nevada action. The remittitur from the California Court of Appeal was received and filed in the Los Angeles action on May 25, 1964, and on May 27, 1964, the superior court in the Los Angeles action vacated its order granting the motion of Harrah's Club to quash service of summons and complaint on Harrah's Club. Harrah's Club was given an extension of time within which to file its answer to the complaint. Harrah's Club filed in the Los Angeles action a notice of motion for a stay of proceedings as to Harrah's Club and William F. Harrah. On July 1, 1964, Brunzell filed a motion in the Los Angeles court for a preliminary injunction to restrain Harrah's Club from proceeding with the Nevada action. The motion of Harrah's Club for a stay of the California action and the motion of Brunzell for a preliminary injunction against Harrah's Club restraining it from proceeding with the Nevada action were heard in the Los Angeles Superior Court on July 13, 1964. Apparently, because of the preliminary injunction granted by the Nevada court restraining Brunzell from going forward with the Los Angeles action (based on the erroneous ruling of the California Superior Court quashing service of summons and complaint on Harrah's Club), Judge Patton, on July 23, 1964, signed a written stay order staying all proceedings in the Los Angeles action against Harrah's Club and William F. Harrah, pending disposition of the Reno lawsuit or pending termination of the injunction dated August 23, 1963, made in the Nevada case by the Nevada trial court, whichever event first occurs. Judge Patton also denied Brunzell's motion for preliminary injunction to enjoin Harrah's Club from pro-

ceeding with the Nevada case. In connection with granting the stay order the court stated: "It appears that unless this order is made, plaintiff in this action threatens to proceed with this action in violation of the injunctive order made in the 'Reno lawsuit.'"

No appeal was taken by Brunzell from Judge Patton's order of July 23, 1964. denying its motion for a preliminary injunction against Harrah's Club proceeding with the Nevada action.

In Nevada, following the decision of the Court of Appeal in reversing the superior court order quashing service and holding that Harrah's Club was subject to California jurisdiction, Brunzell renewed its motion in the Nevada action for a stay of proceedings in Nevada and also moved to terminate and dissolve the injunction restraining Brunzell from proceeding against Harrah's Club in California. On December 24, 1964, the Nevada trial court denied Brunzell's motion to stay the Nevada proceedings and to dissolve the August 23, 1963, injunction restraining Brunzell from proceeding with the Los Angeles action. Brunzell thereupon appealed to the Nevada Supreme Court from the order of the trial court denying its motion for a stay of the Nevada proceedings and from the order denying its motion to dissolve the injunction restraining Brunzell from proceeding against Harrah's Club in California. On July 26, 1965, the Nevada Supreme Court (*Brunzell Constr. Co., Inc., of Nevada* v. *Harrah's Club*, 81 Nev. 414 [404 P.2d 902]) reversed the order of the trial court which granted the preliminary injunction against Brunzell.[2] The reversal by the Nevada Supreme Court was on technical grounds, namely, that the trial court had not required the filing of a bond as required by their statutes upon the granting of a preliminary injunction. The court, however, pointed out that the result of a reversal on such technical grounds would result in "a curing of the defect and another temporary injunction based on the furnishing of a bond with a second appeal on the law and the facts already before us in the voluminous briefs and the spirited oral arguments already presented. This would require a duplication of effort and an expenditure of time for which such action on our part would be responsible. We think it would be better for all of the litigants involved in the

---

[2]The Nevada Supreme Court dismissed Brunzell's renewed motion for a stay on the ground that an order granting or denying a stay is not appealable in Nevada.

Nevada and California actions that we express our views at this time.''

The Supreme Court thereupon proceeded to analyze the preliminary injunction, and the reasons given for its issuance by the trial court. The Supreme Court concluded its opinion with this statement: ''We hold that the injunction restraining Brunzell from prosecuting the California action is not justified by the reasons recited by the court below (which are called findings, but are for the most part conclusions) or by the briefs of respondent, and that the injunction order must be reversed.'' (404 P.2d at p. 910.) In the course of the opinion the court pointed out that all personal defendants other than Harrah himself lived in Los Angeles County, California; that all defendants were subject to the California jurisdiction.

The court then stated: ''To all intents and purposes the case is at issue there. Harrah will not face two trials, but only the one trial in California. Its whole complaint seems to be that it would receive fairer treatment, and at less expense, in a Nevada court. Brunzell insists that it can get complete relief against all defendants in California alone; that unless the injunction is dissolved, *it* faces two suits, one defending against Harrah's action in Nevada and one against the California defendants in California, in an action in tort growing out of the same contract. This contention appears to be well taken.'' (*Ibid.*)

After the Supreme Court of Nevada reversed the lower court injunction, Brunzell filed, on September 3, 1965, in the Los Angeles action, notice of motion for preliminary injunction to restrain Harrah's Club from proceeding with the Nevada action. Harrah's Club, on October 18, 1965, filed in the Los Angeles action notice of motion to stay all proceedings.

Brunzell's motion for preliminary injunction enjoining further proceedings in the Nevada action and the motion of Harrah's Club to stay the Los Angeles action were heard in the Los Angeles Superior Court by Judge Nutter and a preliminary injunction was issued on October 29, 1965, upon bond being filed. The preliminary injunction enjoined and restrained Harrah's Club from maintaining and prosecuting the Reno action against Brunzell and Glens Falls. This is the preliminary injunction which is the subject of this appeal. By a minute order dated October 28, 1965, the Los Angeles court

denied the motion of Harrah's Club to stay the Los Angeles action.

On December 23, 1965, Harrah's Club filed its appeal from the preliminary injunction and from the order denying the club's motion to stay proceedings.[3]

■ Where there has been a change in the controlling facts upon which an injunction was granted, or the law has been changed, modified or extended, or where the ends of justice would be served by modifying or vacating a previous order granting or denying injunctive relief the court has inherent power to vacate or modify its previous order when the circumstances and situation of the parties have so changed as to render such action just and equitable. (See *Sontag Chain Stores Co.* v. *Superior Court*, 18 Cal.2d 92, 95 [113 P.2d 689]; *Union Interchange, Inc.* v. *Savage*, 52 Cal.2d 601 [342 P.2d 249].) This principle applies to preliminary as well as permanent injunctions. (52 Cal.2d at p. 606.) ■ The instant case is a classic example of a factual situation having changed to such an extent as to require the issuance of an injunction previously denied. When the Superior Court of Los Angeles, on July 23, 1964 (Judge Patton's order), made its written order denying the injunction sought by Brunzell in California, there was still in force in the Nevada action an injunction enjoining Brunzell from proceeding with the Los Angeles action. The Nevada case injunction was in turn based on the erroneous order of the Superior Court of Los Angeles quashing service of summons and complaint on Harrah's Club. Judge Patton in his decision chose to defer to the ruling of the Nevada trial court[4] and specifically stated in his order: "It appears that unless this order is made plaintiff in this action threatens to proceed with this action in violation of the injunctive order made in the 'Reno lawsuit.' " The stay order granted by Judge Patton further states: "All proceedings in this action against defendant Harrah's Club and William F. Harrah shall be stayed pending disposition of the

---

[3]An order granting a stay is not appealable. (*Pacific Engine etc. Works* v. *Superior Court*, 132 Cal.App.2d 739, 745 [282 P.2d 937].) An order refusing to grant a stay is also not appealable. (Code Civ. Proc., § 963; *Farmland Irr. Co.* v. *Dopplmaier*, 48 Cal.2d 208 [308 P.2d 732, 66 A.L.R.2d 590]—the decision on the stay order was reviewed on the appeal from the final judgment.)

[4]In this connection the Nevada Supreme Court stated (404 P.2d at p. 906): "Harrah makes much of the fact that in the California action the superior court, on July 23, 1964, granted Harrah's motion for a stay of the California action against it, but it is apparent from the language used by the California superior court that it did this in recognition of the Nevada district court's injunction."

'Reno lawsuit', action No. 199,877, now pending in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, or pending termination of the injunction dated August 23, 1963, made in said 'Reno lawsuit' by the Nevada court itself, in the event it should hereafter elect to do so, whichever event first occurs."

The order clearly contemplates further proceedings in the Los Angeles Superior Court upon termination of the injunction in the "Reno lawsuit." The very change of circumstances provided for by the Los Angeles court did in fact occur when the Nevada Supreme Court on July 26, 1965, reversed the preliminary injunction granted by the Nevada trial court. In this factual context it would appear that the Los Angeles Superior Court had jurisdiction to grant a preliminary injunction although such an injunction had been previously denied. It is apparent that Judge Patton's trial court decision denying the application of Brunzell for preliminary injunction did not become the law of the case and did not rob the Los Angeles Superior Court of jurisdiction to grant an appropriate preliminary injunction in October 1965, in view of the decisions of the California Court of Appeal and the Supreme Court of Nevada which so substantially changed the basic factual picture.

Appellant vainly argues that on the facts the superior court abused its discretion in enjoining the further prosecution of the Nevada case in the Reno court on the theory that Nevada is the fair and proper place to try this litigation.

■ This matter was heard on affidavits. In such circumstances the statement of our Supreme Court in *Griffith Co.* v *San Diego College for Women* (45 Cal.2d 501, 507, 508 [289 P.2d 476, 47 A.L.R.2d 1349]) is apposite: "When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, . . ." And on appeal from the granting of a preliminary injunction "this court must consider the evidence in the light most favorable to the prevailing party . . . giving them the benefit of every reasonable inference, and resolving conflicts in favor of the trial court's action." (*Christopher* v. *Jones*, 231 Cal.App.2d 408, 409, 412 [41 Cal.Rptr 828].) ■ Also. the "action of a trial court in granting . . . a . . . preliminary injunction is a matter within its own sound discretion [citation], and will not be disturbed on appeal in the absence of a clear showing

that the court abused its discretion. [Citations.]'' (*Haseltine* v. *Haseltine*, 203 Cal.App.2d 48, 64 [21 Cal.Rptr. 238].) We are not persuaded that the court abused its discretion in the matter at bench.

Appellant makes the argument that the convenient forum for this litigation is Nevada rather than California. In support of this thesis appellant lists a number of witnesses (and makes brief reference to the subject matter of their testimony) who live in Nevada whom it expects to call. Brunzell lists from 35 to 40 persons who live in California whom it expects to call. The record contains an affidavit by Mr. Garrie, attorney for Brunzell, filed in the Los Angeles action on July 29, 1965, in which he states that the ''overwhelming majority of necessary witnesses are residents of L.A. County.''

Both the California Court of Appeal and the Nevada Supreme Court (*supra*, pp. 907-908) have touched on this question of convenience. The Court of Appeal states (*supra*, pp. 745-746): ''Under the circumstances of this case we do not believe that any inconvenience to Harrah's Club is of any concern and 'traditional notions of fair play and substantial justice' will not be offended by holding Harrah's Club amenable to jurisdiction in this case.'' The attack in this area was somewhat broader before the Nevada Supreme Court. Its scope is revealed in the following quotation: ''As to the finding that the California action was brought to subject Harrah to inconvenience and expense and to vex, harrass, oppress and annoy Harrah and gain an inequitable advantage over him, we think the complete answer is that it is uncontradicted that California was the only state in which Brunzell could find and serve all the California defendants.'' (404 P.2d at p. 907.) Also relevant is the court's comment that immediately follows (pp. 907-908): ''And we think we may accept the analysis that the California District Court of Appeal made of the contract documents.

'' 'The contract documents (invitations to bid, instructions to builders, form of proposal, form of agreement, A.I.A. general conditions, report of foundation investigation, supplement to general conditions, special provisions and plans and specifications and addendums thereto) prepared in Los Angeles County contain provisions requiring that the construction work be performed in accordance with the safety orders of the Industrial Accident Commission of the State of California, further that bidders on the construction work be

required by the contract documents to comply with Sections 4100 to 4108 inclusive of the Government Code of the State of California. In short, Harrah's Club's representative in Los Angeles, in effect, wrote into the contract provisions that the laws of California shall govern the contract insofar as subcontractors and safety provisions are concerned.' ''

Appellant argues that this litigation should be tried in Nevada on the theory that appellant will receive less favorable consideration in California, where gambling is illegal; that there is a certain amount of bias and prejudice against appellant because it is in the gambling business. In making this argument appellant overlooks the significance of the factual picture of legalized gambling in this state in certain respects; viz., betting on horse races and draw poker. In *Nevcal Enterprises, Inc.* v. *Cal-Neva Lodge, Inc.*, 194 Cal.App.2d 177 [14 Cal.Rptr. 805], the court stated (pp. 180-181):

''In these modern days Californians cannot afford to be too pious about this matter of gambling. Stud poker is contrary to good morals (so it seems), but not draw poker or draw low ball poker (*Remmer* v. *Municipal Court*, 90 Cal.App.2d 854, 856-857 [204 P.2d 92]; *Monterey Club* v. *Superior Court*, 48 Cal.App 2d 131, 146 [119 P.2d 349]), although they actually constitute gambling. (*Lavick* v. *Nitzberg, supra,* 83 Cal.App. 2d 381, 382-383 [188 P.2d 758].) This situation grows out of the concept that the 'determination of public policy of states resides, first, with the people as expressed in their Constitution and, second, with the representatives of the people—the state Legislature.' (*Jensen* v. *Traders & General Ins. Co.*, 52 Cal.2d 786, 794 [345 P.2d 1].) So draw poker, not being declared illegal by statute, is held to be lawful (*Monterey Club* v. *Superior Court, supra,* at p. 148). Hence some of our less ascetic communities license draw poker parlors which are conducted to the edification of the citizenry and presumably to the profit of the treasury and the taxpayer.''

At one time ''Horse racing was said [citation], to contravene good morals, . . . But the legislature by enactment of the Horse Racing Act of 1933 (codified as Bus. & Prof. Code, §§ 19400-19663), and the People by constitutional amendment ratifying said law (Cal. Const., art. IV, § 25a), have reversed that policy with respect to such gambling done upon the licensed premises of a racing association and through pari-mutual machines. The state licenses qualified applicants to conduct horse racing and betting thereon if made within the track enclosure and through the pari-mutual betting machines,

i.e., where the customers bet with each other and not with the house. . . ."[5]

All this leaves little room for California courts to be shocked or to prate of public morals or public policy when confronted with litigation growing out of a contract to construct a casino in Reno where gambling is legal. Such a contract is one for the accomplishment of a legal objective, certainly not contrary to the public policy of Nevada and essentially not in conflict with that underlying the California Horse Racing Law. It therefore seems likely that appellant over-emphasizes its theory of bias and prejudice against it because of the business in which it is engaged. We see no reason why a fair and unbiased jury cannot be obtained here to try this case.

It is unnecessary to discuss other questions that have been debated by counsel.

We find no persuasive basis for upsetting the preliminary injunction (dated October 29, 1965) enjoining Harrah's Club from further prosecuting Brunzell in the Nevada case (No. 199,877).

### The Second Appeal

This is an appeal from an order by Judge Hufstedler denying application of defendant Harrah's Club to require plaintiff Brunzell to arbitrate, and denying an order staying the Los Angeles action until such time as arbitration was had.

On December 6, 1965, defendant Harrah's Club filed a notice and application in the Los Angeles case to require plaintiff Brunzell to arbitrate the controversy in litigation and requesting that an order be made staying the Los Angeles action until such arbitration had been held. The application was supported by the declaration of the attorney for Harrah's Club and by points and authorities on its behalf. Opposition thereto and points and authorities were filed on behalf of plaintiff by its attorneys.

It will be recalled that Harrah's Club filed its action in Nevada on July 24, 1962. No demand was made in the Nevada action by Harrah's Club for arbitration. The prayer of Harrah's complaint in the Nevada action seeks damages against Brunzell and Glens Falls Insurance Company and prays for an order and judgment enjoining and restraining Brunzell from any further prosecution of the California action against Harrah's Club. The evidence in this matter revealed, *inter*

---

[5] A bill authorizing horse racing at night has just been passed by the Legislature and signed by the Governor.

*alia,* that the construction project, which was the building of a casino for Harrah's Club in Reno, Nevada, was completed on June 15, 1963, under a contract with another contractor; also, on May 29, 1962, Harrah's Club sent Brunzell a written notice electing to exercise its right to terminate the construction contract between Brunzell and Harrah's Club.

The court made the following findings of fact:

"1. It is true that Article 40 of the General Conditions of the Contract for the Construction of Buildings, part of the contract between Brunzell and Harrah's Club, provides in part as follows:

" 'Notice of the demand for arbitration of a dispute shall be filed in writing with the other party to the contract, and a copy filed with the architect. The demand for arbitration shall be made within a reasonable time after the dispute has arisen. In no case, however, shall a demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract.'

"2. No notice of demand for arbitration was filed in writing until service by mail on December 6, 1965, of notice and application to require plaintiff to arbitrate and supporting papers in the within action.

"3. On July 24, 1962, Harrah's Club filed an action in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, entitled 'Harrah's Club, a Nevada corporation, Plaintiff, vs. Brunzell Construction Co., Inc. of Nevada, a Nevada corporation, and Glens Falls Insurance Company, a New York corporation, Defendants.' No demand was made in the Nevada action by Harrah's Club for arbitration. The prayer of the complainant Harrah's Club in said Nevada action seeks damages against Brunzell and Glens Falls Insurance Company and requests an order and judgment enjoining and restraining Brunzell from any further prosecution of the California action against Harrah's Club.

"4. The construction project, a building for Harrah's Club in Reno, Nevada, was completed on June 15, 1963, under a contract with another contractor, Stolte, Inc.

"5. On May 29, 1962, Harrah's Club sent Brunzell a written document purporting to be a notice electing to exercise the right to terminate the construction contract between Brunzell and Harrah's Club.

"6. Harrah's Club has waived both its right to arbitrate and its right to insist on arbitration as a defense to the within action brought by Brunzell."

From the foregoing facts the court concluded:

"1. That the motion and application of Harrah's Club for an order to require Brunzell to arbitrate should be and hereby is denied.

"2. That the motion of Harrah's Club for an order to stay the within action until such arbitration has been held should be and hereby is denied."

From June 11, 1962, the date of filing the original complaint in the California action, until December 6, 1965, it does not appear that any party to this litigation, either in California or Nevada, requested arbitration. Almost two and a half years elapsed after Harrah's Club filed its action in Nevada before Harrah's Club made any application for arbitration in either the California or Nevada litigation. It will be recalled that the building was completed on June 15, 1963, under a contract with another building concern. The demand for arbitration was made almost a year and a half after the building's completion.

Also, it will be recalled that ever since the filing of the initial suit in this state in June 1962, and the filing of the suit by Harrah's Club in Nevada in July of that year, both sides have been actively and energetically litigating the problems growing out of this controversy in each of these actions—to the Court of Appeal in California and the Supreme Court in Nevada. The trial court could reasonably draw an inference that during this active litigation period Harrah's Club was essentially interested in getting a judicial determination of its rights growing out of the construction contract in controversy and that by reason of its complete inaction during that period in taking any steps toward arbitration it intended to abandon and waive whatever rights it initially had under the contract to demand arbitration of any controversy with Brunzell.

Appellant does not appear to attack the sufficiency of the evidence to sustain any of the findings of fact made by the trial court In this connection it should be noted that "whether or not waiver has taken place is ordinarily a question of fact. . . ." (*Local 659, I.A.T.S.E.* v. *Color Corp. of America,* 47 Cal.2d 189, 196 [302 P.2d 294].) This case also stated (p. 194) : "In harmony with the arbitration statute, *supra,* it has been held that the arbitration provision of a contract may be waived by either or both of the parties by litigating the dispute which would be arbitrable under the provision and not raising the question of the arbitration provision [citations]. . . ."

In *Berman* v. *Renart Sportswear Corp.*, 222 Cal.App.2d 385, this court stated at page 389 [35 Cal.Rptr. 218] : "A right to arbitration may be waived. (Code Civ. Proc., § 1281.2, subd. (a).) It is waived by bringing suit on the basic contract itself without seeking arbitration [citation]. . . ." Appellant states in his brief: "It is true that so far as the *Reno* case is concerned, that Harrah has waived the right to demand arbitration in that action It is submitted that that is something separate and distinct from the rights and defenses that Harrah's Club is entitled to assert in California. To put it squarely, appellant is quite willing to litigate the matter in court in Reno, but would prefer because of public policy reasons—to arbitrate the matter in California." The law, however, does not give Harrah's Club the right at this stage of the litigation to pick and choose the particular remedy that it prefers. In *Local 659, supra,* page 195, the court stated : "that a failure by a party to proceed to arbitrate in the manner and at the time provided in the arbitration provision is a waiver of the right to insist on arbitration as a defense to an action on the contract. [Citations.]" This statement is quoted with approval in *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers,* 192 Cal.App.2d 268, 278 [13 Cal.Rptr. 446].

On the record it is clear that the trial court correctly held that Harrah's Club had waived its right to arbitrate the matters growing out of the building contract with Brunzell.

Since the court properly denied the petition for arbitration the request for a stay of proceedings must also fail. (*Berman* v. *Renart Sportswear Corp., supra,* p. 690.)

The preliminary injunction granted October 29, 1965, is affirmed.

The order denying arbitration is affirmed.

The purported appeal from the order denying the motion of Harrah's Club to stay proceedings in the Los Angeles case until such time as arbitration was had is dismissed.

Jefferson, Acting P. J., and Kingsley, J., concurred.