[L. A. No. 29724. In Bank. May 5, 1970.]

BRUNZELL CONSTRUCTION CO., INC., OF NEVADA,
Plaintiff and Appellant, v.
WILLIAM C. WAGNER et al., Defendants and Respondents.

**COUNSEL**

Kalmbach, De Marco, Knapp & Chillingworth, Richard C. Greenberg and Leon J. Garrie for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, James M. Radnich, Andrew J. Nocas, Harry D. Palmer, Booth, Mitchell, Strange & Willian and E. Gary Smith for Defendants and Respondents.

## OPINION

**TOBRINER, J.**—Plaintiff Brunzell Construction Company of Nevada appeals from orders, rendered pursuant to section 583 of the Code of Civil Procedure, dismissing its action against certain defendants for failure to bring its suit to trial against them within five years of filing. Although numerous intervening proceedings have transpired between plaintiff and other named defendants which concededly excuse plaintiff's failure to bring the case to trial against those defendants, the trial court, relying on *Ross* v. *George Pepperdine Foundation* (1959) 174 Cal.App.2d 135, 141-143 [344 P.2d 368], apparently ruled as a matter of law that because the causes of action against the instant defendants were legally severable from the causes of action involving the other defendants, the recognized exception to section 583 in cases in which proceeding to trial would be "impracticable and futile" could not be applicable. ▇▇▇ We have concluded that the bare fact of severability does not preclude the application of the "impracticable and futile" exception as that doctrine has been consistently interperted by this court.

This litigation arose out of the circumstances surrounding a contract between plaintiff contractor and Harrah's Club for the construction of a casino in Reno, Nevada. In its complaint, plaintiff joined the architects and the soil and structural engineers as codefendants with the owner, Harrah's Club,[1] and the surety, Glens Falls Insurance Company; the architects and the soil and structural engineers are the only defendants involved in this appeal.[2] The complaint, consisting of seven counts, alleged, inter alia, that various defendants were liable for (1) misrepresentation, fraud, and negligence in the preparation of the contract documents, (2) breach of contract, and (3) breach of express warranty. The defendants in the instant action were joined with the Harrah's Club defendants in the counts for misrepresentation and breach of warranty, and were the sole parties charged with negligence in preparing the contract documents—documents which the complaint characterized as "defective, unfit, inaccurate, incomplete, self-contradictory and unsuitable for the purpose for which they were

---

[1]Plaintiff also joined the related entity of Harrah's South Shore Corporation and William Harrah, in his individual capacity, as defendants. They are not involved in the instant appeal. For convenience, unless otherwise noted these two defendants and Harrah's Club will hereinafter be referred to collectively as "the Harrah's Club defendants."

[2]Specifically, the defendants involved in this appeal are William C. Wagner, the architect; Robert Raimist, the architect's employee; Dames & Moore, an engineering partnership; Vernon A. Smoot, Trent R. Dames and William M. Moore, soil engineers; and John A. Martin, structural engineer.

intended . . . ." The allegations of the complaint are summarized in considerably more detail in the margin.[3]

The procedural chronology of the litigation is rather complicated but a brief review is necessary for a proper perspective on the present posture of the proceedings.[4] Plaintiff Brunzell's complaint was filed in the Los Angeles County Superior Court on June 11, 1962. A little over a month later, on July 19, 1962, Harrah's Club moved to quash service. Five days later, on July 24, 1962, Harrah's Club instituted its own suit in Nevada, naming Brunzell and the Glens Falls Insurance Company as defendants, and requesting an injunction to restrain Brunzell from proceeding in the California action. The Nevada trial court did not rule immediately on the injunction request.

On March 29, 1963, the California trial court granted Harrah's Club's motion to quash service in the California action. Thereafter, on August

---

[3]In *Brunzell Constr. Co.* v. *Harrah's Club* (1964) 225 Cal.App.2d 734, 736 [37 Cal.Rptr. 659], an earlier appeal in this case, the court carefully set out the numerous contentions of the complaint: "The first cause of action[,] . . . for fraud and misrepresentation [by] . . . all of the defendants with the exception of Glen Falls Insurance Company[,] . . . set[s] out certain misrepresentations appearing in the contract documents which were prepared in Los Angeles. The second cause of action[,] . . . against Harrah's Club, William Harrah, Harrah's South Shore Corporation, and some fictitious defendants, . . . allege[s] . . . a breach of contract evidenced by the same documents referred to in the first cause of action. The third cause of action[,] . . . against William C. Wagner, the architect, Robert Raimist, the architect's employee, Dames & Moore, a partnership, Vernon A. Smoot, Trent R. Dames, William W. Moore, William W. Brewer, Jr., Le Roy Crandall, soils engineers, John A. Martin, structural engineer, and various fictitious defendants[,] . . . allege[s] that . . . said defendants negligently created and prepared the contract documents including the plans and specifications and that plaintiff was damaged as a proximate result of such negligence. It is alleged that the 'contract documents are defective, unfit, inaccurate, incomplete, self-contradictory and unsuitable for the purpose for which they were intended. . .' The fourth cause of action is against the architect defendants and certain fictitious defendants for tortiously interfering with the contract between plaintiff and Harrah's Club. The fifth cause of action[,] . . . against Harrah's Club, William Harrah, Harrah's South Shore Corporation and certain fictitious defendants[,] . . . allege[s] that said defendants refused to make payments for stockpiled materials all to the end that plaintiff would thereby be weakened and by economic compulsion be forced to abandon the casino contract. The sixth cause of action[,] . . . against all defendants with the exception of Glen Falls Insurance Company, . . . allege[s] among other things that there was a breach of an express warranty with reference to the sufficiency of the contract documents. The seventh cause of action[,] . . . against Harrah's Club, William Harrah, Harrah's South Shore Corporation, Glen Falls Insurance Company, and certain fictitious defendants, . . . seeks among other things a determination of the liability of plaintiff and the named defendants with reference to a surety bond issued to Harrah's Club with Glen Falls Insurance Company as the surety."

[4]The entire procedural history of the case preceding this appeal is most ably and comprehensively detailed in *Brunzell Constr. Co.* v. *Harrah's Club* (1967) 253 Cal. App.2d 764 [62 Cal.Rptr. 505], a decision involving an earlier appeal in this litigation.

23, 1963, the Nevada trial court, apparently relying on the California trial court's decision, granted Harrah's motion for an order enjoining Brunzell from proceeding in California, but reserved to Brunzell the right to prosecute its appeal from the California order quashing service. Brunzell did appeal the California trial court order and on May 25, 1964, the Court of Appeal reversed the order quashing service. (*Brunzell Constr. Co.* v. *Harrah's Club, supra,* 225 Cal.App.2d 734.)

Trial did not proceed immediately in California, however, for the injunction against Brunzell, issued August 23, 1963, by the Nevada trial court, was still outstanding, and on July 23, 1964, Harrah's Club obtained an order staying the California suit pending the termination of the Nevada injunction. That injunction was terminated on July 26, 1965, when the Supreme Court of Nevada reversed the original injunctive order of the Nevada trial court (*Brunzell Constr. Co.* v. *Harrah's Club* (1965) 81 Nev. 414 [404 P.2d 902]).

On September 3, 1965, less than two months after the Supreme Court of Nevada had dissolved the injunction, Brunzell moved in the Los Angeles County Superior Court for a preliminary injunction to restrain Harrah's Club from proceeding with its Nevada action. The court issued such an injunction on October 29, 1965; Harrah's Club appealed from that order, and on September 13, 1967, the Court of Appeal affirmed the issuance of the injunction (*Brunzell Constr. Co.* v. *Harrah's Club, supra,* 253 Cal.App.2d 764). Remittitur was filed on October 23, 1967.

One week later, on October 30 and 31, 1967, the defendants in the instant appeal, who were neither parties to nor participated in the above proceedings, moved to have the action against them dismissed under section 583 of the Code of Civil Procedure, for plaintiff's failure to bring the action to trial within five years. (The original complaint, it will be recalled, was filed on June 11, 1962.) The trial court, citing *Ross* v. *George Pepperdine Foundation, supra,* 174 Cal.App.2d 135, as authority, granted defendants' motions on November 16, 1967;[5] the order of dismissal was filed on January 22, 1968. This appeal by plaintiff followed.

 Although section 583's requirement of dismissal of an action for failure to bring it to trial within five years is, by its terms, mandatory,[6] this

---

[5] The trial court did not deliver a full opinion explaining its disposition; the minute order, entered November 20, 1967, reads simply: "Motion granted. Ross v. Peperdine [*sic*] Foundation, 174 CA2d 135."

[6] As applicable in the instant case, section 583 of the Code of Civil Procedure read in relevant part: "The court may in its discretion dismiss any action for want of prosecution on motion of the defendant and after due notice to the plaintiff, whenever plaintiff has failed for two years after action is filed to bring such action to trial . . . . Any action heretofore or hereafter commenced shall be dismissed by the

court has long acknowledged that the purpose of the section is to "prevent *avoidable* delay for too long a period . . . not . . . arbitrarily to close the proceeding at all events in five years" (*Christin* v. *Superior Court* (1937) 9 Cal.2d 526, 532 [71 P.2d 205, 112 A.L.R. 1153]) and to confine the section's operation to achieve that purpose, we have recognized an exception to the section "where, for all practical purposes, going to trial would be impossible, whether this was because of total lack of jurisdiction in the strict sense, or because proceeding to trial would be both impracticable and futile." (*Christin* v. *Superior Court, supra,* 9 Cal.2d 526, 533; *General Motors Corp.* v. *Superior Court* (1966) 65 Cal.2d 88, 93-97 [52 Cal.Rptr. 460, 416 P.2d 492]; *Rose v. Knapp* (1951) 38 Cal.2d 114, 117-118 [237 P.2d 981]; *Pacific Greyhound Lines* v. *Superior Court* (1946) 28 Cal.2d 61, 64-68 [168 P.2d 665].)

In the instant case plaintiff contends that during the pendency of the various intervening appeals and injunctions involving the Harrah's Club defendants it was "impracticable and futile" for it to proceed to trial against the present defendants.[7] Plaintiff concedes that its causes of action against the two groups of defendants were legally severable, but it argues that, for all practical purposes, the similarity of the issues concerning all defendants and the complexity and probable expense of the anticipated trial rendered it "impracticable and futile" to proceed solely against the instant defendants. The trial court apparently concluded that as long as the causes of action were severable, i.e., as long as it was *possible* for plaintiff to bring its case to trial against the instant defendants, the "impracticability and futility" exception did not apply and the exigencies of the particular case were therefore not relevant. Our prior case law renders such an interpretation of the "impracticability" exception clearly too narrow.

In *Christin* v. *Superior Court, supra,* 9 Cal.2d 526, 532-533, one of

court . . . on motion of the defendant, after due notice to plaintiff or by the court on its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, . . ." In addition, section 583 itself permits the parties to extend the time limitation by written stipulation and provides an exception to the time limit if the defendant has been absent from the state or concealed therein.

Unless otherwise specified, all section references are to the Code of Civil Procedure.

[7]During the pendency of its appeal from the order quashing service on Harrah's Club, from March 29, 1963, until May 25, 1964—a period of almost 14 months— it was clearly impossible for plaintiff to proceed to trial against Harrah's Club. It was also impossible for plaintiff to go to trial against Harrah's Club while its action was stayed pursuant to the outstanding Nevada injunction—a period of at least 12 months (from July 23, 1964 (stay granted by California trial court) until July 26, 1965 (order granting injunction reversed by Supreme Court of Nevada)). Thus, with respect to Harrah's Club, at the time the instant motions for dismissal were filed plaintiff was excused from the operation of section 583 for a period of at least two years and two months.

the seminal decisions involving this implied exception to section 583, this court clearly indicated that the "impracticability" exception could not be equated with strict impossibility. After reviewing the case of *Kinard* v. *Jordan* (1917) 175 Cal. 13, 16 [164 P. 894], in which this court recognized an exception to section 583 for the period of time that the trial court had no jurisdiction to proceed to trial, the *Christin* court declared: "The theory of this decision seems to us to be equally applicable to a situation where, for all practical purposes, going to trial would be . . . both impracticable and futile. In this connection, a useful analogy may be drawn from the rules on impossibility as a defense in the enforcement of contract obligations. Modern cases recognize as a defense not only objective impossibility in the true sense, but also *impracticability due to excessive and unreasonable difficulty or expense.* [Citations.]" (Italics added.)

This "practical" view of the implied exception to section 583 was reiterated in *Pacific Greyhound Lines* v. *Superior Court, supra,* 28 Cal.2d 61, a case in many respects similar to the instant proceeding. In *Pacific Greyhound* several defendants in a personal injury suit moved for dismissal of the action under section 583. The trial court denied the motions of all the defendants on the grounds that during the five-year period *one* of the defendants had been in military service outside the state and "that it was impossible or impracticable to try the case during the military service of such defendant." In affirming the trial court decision, we specifically focused our inquiry on whether evidence in the record demonstrated that for some time during the five-year period "it was 'impossible' or 'impracticable and futile' either in an objective sense or 'due to excessive and unreasonable difficulty or expense' to proceed to trial." (28 Cal.2d at p. 65.) Although the *Pacific Greyhound* court did not specifically note whether the causes of action against the various defendants were severable or not,[8] the court, by declining to rely on any possible non-severability, implied that the mere legal possibility of proceeding in separate trials would not bar a finding of "impracticability and futility." Instead the court recognized that "impracticability" was a matter to be determined on the basis of all the practical circumstances of the particular case.

*Westphal* v. *Westphal* (1943) 61 Cal.App.2d 544 [143 P.2d 405], also runs directly counter to the interpretation invoked by the trial court in the instant case. In *Westphal,* after 12 plaintiffs filed an action, the defendants' demurrer was sustained as to 10 of the 12 plaintiffs and the 10 appealed. Although the appeal continued for four years, the two remaining plaintiffs did not set trial during this period but awaited the conclusion of the appeal.

---

[8] Although the *Pacific Greyhound* court did not characterize the causes of action as severable or not, it did explicitly note that the "military" defendant had filed a completely separate answer from the other defendants (28 Cal.2d at p. 68).

After the appeal had been decided and the initial five-year period had run, defendants moved for dismissal against the two plaintiffs under section 583, contending that the latter could have preserved their rights by severing their causes of action from those of the plaintiffs who appealed. Although the court expressed uncertainty as to the availability of severance to the plaintiffs there, it did not find it necessary actually to determine whether the severance procedure would have been permissible, for it concluded that the implied exception to section 583 was applicable in any event since "if not legally impossible, 'for all practical purposes, going to trial would be impossible' [citation] for these . . . plaintiffs during the pendency of their co-plaintiffs' appeal. . . ." (61 Cal.App.2d at p. 550.)

As the above cases illustrate, the "impracticability and futility" concept has not been confined to instances in which proceeding to trial was impossible. Although this court has not been able to articulate a comprehensive definition of the essentially amorphous "impracticability" concept (see *General Motors Corp.* v. *Superior Court, supra,* 65 Cal.2d 88, 95), we have consistently declared that the applicability of the exception must be judged "in light of *all* the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves." (Italics added.) (*General Motors Corp.* v. *Superior Court, supra,* 65 Cal.2d 88, 96; *Woley* v. *Turkus* (1958) 51 Cal.2d 402, 407 [334 P.2d 12]; *Rose*.v. *Knapp, supra,* 38 Cal.2d 114, 117.)

In instances in which proceeding to trial against one defendant becomes impossible or impracticable, the fact that a plaintiff could have severed his causes of action and proceeded separately against a codefendant is of course one important—indeed, the threshold—factor to be considered in determining whether it was impossible or impracticable for him to proceed to trial against that codefendant within the statutory period. *Pacific Greyhound* and *Westphal* illustrate, however, that the availability of severance is not solely determinative in every instance. (See also *Good* v. *State of California* (1969) 273 Cal.App.2d 587, 592-594 [78 Cal.Rptr. 316]; *Arnold* v. *State of California* (1969) 273 Cal.App.2d 575, 585-586 [78 Cal.Rptr. 309].) In many situations in which it is impossible or impracticable to proceed against one codefendant it may be impracticable, in terms of the burden both to the parties and to judicial administrations as a whole, to proceed against other defendants in a separate suit. To require a plaintiff to sever causes of action against multiple defendants *whenever* it becomes impossible or impracticable to proceed against one defendant within the five-year period would be to require unproductive duplication

of effort, compel the incurrence of excessive expense, and generally undermine all the policies served by modern theories of consolidation in a substantial number of cases. As we noted in *General Motors Corp.* v. *Superior Court, supra,* 65 Cal.2d 88, 91, the purposes behind section 583 and the modern concept of consolidation are not dissimilar,[9] and thus we should not mechanically apply section 583 so as to abrogate many of the advances achieved by the liberalization of the rules of consolidation of actions and parties.

We in no way imply, of course, that whenever causes may be consolidated, it is "impracticable" to proceed except against all permissibly joined parties. (See, e.g., *Hsu* v. *City of San Francisco* (1966) 240 Cal.App.2d 317, 322-324 [49 Cal.Rptr. 531]; *Fisher* v. *Superior Court* (1958) 157 Cal.App.2d 126, 130-131 [320 P.2d 894].) ▮ As we stated in *Pacific Greyhound Lines* v. *Superior Court, supra,* 28 Cal.2d 61, 65, "impracticability and futility" involve a determination of " '*excessive* and *unreasonable* difficulty or expense,' " in light of all the circumstances of the particular case. (Italics added.) This determination requires the consideration of a great variety of factors, including, among others, the expense, complexity, and quantity of the evidentiary duplication that severance would entail,[10] the potential problems that inconsistent judicial determinations would produce,[11] and the degree of hardship or prejudice to the defendants occasioned by the delay. (Cf. *Ellsworth* v. *United States Metals Corp.* (1952) 110 Cal.App.2d 727, 730 [243 P.2d 575].)[12]

Although defendants contend that they should not be "penalized" by an extension of the statutory five-year period since they are in no way responsible for the delay, the "impracticability and futility" concept, as the cases reviewed above reveal, has never been limited to situations "caused" by an individual defendant. (See also *General Motors Corp.* v. *Superior Court,*

---

[9]"Analysis suggests no inconsistency . . . for the consolidation of actions decreases the backlog of cases pending before trial courts and thus enables other litigants to bring their actions to trial with less delay." (See also *Bolsinger* v. *Marr* (1969) 1 Cal.App.3d 267, 270 [81 Cal.Rptr. 498].)

[10]In finding that it would be impracticable for a plaintiff to bring a personal injury action separately from a wrongful death action arising out of the same occurrence in *General Motors Corp.* v. *Superior Court, supra,* 65 Cal.2d 88, 96, we noted that "[The] same issue is central to both [actions], and to insist that the relevant evidence be duplicated at two separate trials would exacerbate the already substantial burdens of the litigation."

[11]Compare *Rose* v. *Knapp, supra,* 38 Cal.2d 114, 117-118, *with Southern Pac. Co.* v. *Superior Court* (1958) 157 Cal.App.2d 168, 177 [320 P.2d 911].

[12]Of course a defendant who believes he will be prejudiced by delay may always seek a severance of the action on his own behalf. Section 1048 of the Code of Civil Procedure provides: "An action may be severed . . . , in the discretion of the court, whenever it can be done without prejudice to a substantial right."

*supra,* 65 Cal.2d 88 (impracticability exception applicable to extend five-year period of personal injury suit, when the suit was consolidated with later accruing wrongful death action; defendant not "responsible" for delay).) The exception's purpose is to limit the harshness of section 583's sanction in all situations where a mechanical operation of the statute would produce injustice, not merely to prevent a defendant from profiting from delay occasioned by his own activities. As the court in *Southern Pac. Co.* v. *Superior Court, supra,* 157 Cal.App.2d 168, 172, indicated, the focus of the exception is on the "justifiability" of the plaintiff's reason for not bringing the case to trial, rather than on the defendant's complicity in the delay.

We must note, however, that our conclusion in no way undermines the principle that "a defendant . . . asking [for dismissal under section 583] is entitled to have his right to dismissal determined as to himself alone." (E.g., *Continental Pac. Lines* v. *Superior Court* (1956) 142 Cal.App.2d 744, 752 [299 P.2d 417]; *Dowling* v. *Superior Court* (1932) 122 Cal.App. 443, 445 [10 P.2d 197].) ▮ "Impracticability" may vary not only as to different proceedings but as to different parties within the same proceeding. Each individual is entitled to have his section 583 claim evaluated with respect to his own particular role in the litigation. We repeat, however, that this exception to section 583 involves a judgment of practical realities, and artificial distinctions between participating litigants should be avoided. (Cf. *Good* v. *State of California* (1969) 273 Cal.App.2d 587, 592-594 [78 Cal.Rptr. 316].)

▮ As stated above, in finding that the severability of the causes of action precluded the operation of the "impracticability" exception, the trial court relied on language in *Ross* v. *George Pepperdine Foundation, supra,* 174 Cal.App.2d 135, 141-143. Insofar as *Ross* is inconsistent with the conclusions expressed herein, it is disapproved.[13]

▮ In view of its reliance on *Ross,* the trial court apparently did not consider plaintiff's "impracticability" contention on its merits. The court did not examine the relationships between the causes of action, the expense and difficulty likely to be engendered by separate trials, the diligence and good faith efforts of the plaintiff, the prejudice or hardship to the instant defendants, or other relevant matters. The trial court is in the most advantageous position to evaluate these diverse factual matters in the first instance (see *General Motors Corp.* v. *Superior Court, supra,* 65 Cal.2d 88, 98)

---

[13]*Langan* v. *McCorkle* (1969) 276 Cal.App.2d 805, 809 [81 Cal.Rptr. 535], a recent case following *Ross,* is similarly disapproved insofar as it is inconsistent with the above conclusions.

and thus it is appropriate that we remand the case to the trial court to determine whether, pragmatically, it was "impracticable and futile" for plaintiff to proceed to trial against the instant defendants during the five-year period succeeding the filing of the complaint.

The orders dismissing the action against defendants are reversed and the case is remanded to the trial court for proceedings in accordance with this opinion.

Mosk, Acting C. J., Peters, J., Burke, J., Sullivan, J., and Files, J.,* concurred.

**McCOMB, J.**—I dissent. I would affirm the orders for the reasons expressed by Acting Presiding Justice Stephens in the opinion prepared by him for the Court of Appeal, Second Appellate District, Division Five (*Brunzell Construction Co.* v. *Wagner,* 2 Civ. 33352, filed December 22, 1969, certified for nonpublication).

Respondents' petition for a rehearing was denied June 4, 1970. McComb, J., was of the opinion that the petition should be granted.

---

*Assigned by the Acting Chairman of the Judicial Council.