[Nos. E001566, E001567. Fourth Dist., Div. Two. Mar. 19, 1987.]

RIM FOREST LUMBER COMPANY, INC., Plaintiff and Appellant, v. WOODSIDE CONSTRUCTION CO. et al., Defendants and Respondents.

COUNSEL

Keller & Holt and E. C. Keller for Plaintiff and Appellant.

Reid & Hellyer and William J. Ward for Defendants and Respondents.

OPINION

**KAUFMAN, Acting P. J.**—Plaintiff Rim Forest Lumber Company, Inc. (plaintiff or Rim Forest) appeals from orders dismissing the complaints in two related actions pursuant to former Code of Civil Procedure section 583, subdivision (a) (discretionary dismissal for failure to bring the action to trial within two years). We conclude this was a highly complex, interrelated litigation in which separate trial of the defendants was impracticable if not legally impossible and the trial court abused its discretion in dismissing the lawsuits.

*Facts*

1. *The Actions*

Plaintiff in 1979 filed complaints in two related actions against Woodside Construction Co. (Woodside) and numerous other individuals and entities. The essential thrust of each complaint was to collect, under various theories and causes of action, moneys allegedly due on account of construction materials provided to Woodside for a number of building projects. Woodside was evidently the construction contractor for all the building projects.

The first action, superior court No. CI 192927, filed October 29, 1979, consisted of four causes of action: two for money due and owing from Woodside and related defendants, and two for foreclosure of mechanic's liens against the property owners. Each pair of causes of action (one for money due and owing and one to foreclose a mechanic's lien) related to a building project on one of the two parcels involved in that action.

The second and larger action, superior court No. CI 193374, filed November 28, 1979,[1] involved building projects on 18 different properties. With respect to each property, the complaint alleged three related causes of action: one for money due and owing from Woodside and its related defendants, one for foreclosure of a mechanic's lien against the alleged property owners, and one against the construction lender to enforce a stop notice to withhold construction loan funds. In addition to the interrelated causes of action with respect to each of the eighteen parcels, the complaint included one cause of action on a release bond posted by the owners in respect to one of the stop notices, six causes of action on assignments to Rim Forest of moneys due to Woodside from various parties, and three omnibus causes of action against Woodside and its related defendants for money due and owing, for an account stated and on an open book account. These last three causes of action were for the total amount plaintiff alleged it was owed, including all amounts allegedly due and owing for construction materials on all eighteen projects.

## 2. *The Parties*

The first action (CI 192927) contained four causes of action against twenty-eight named defendants. The 28 defendants named included Woodside, related partnership entities known as Crestline Project No. 2, Crestline Project No. 4 and Crestline Project No. 5, as well as various other individuals and entities alleged to be partners in Woodside and in the Crestline Project partnerships. The individual Woodside-related defendants included Ronald and Angelene Wagner, Michael Wagner and Madelyn Dimaggio Wagner, Anthony and Linda Dimaggio, Peter Dimaggio, and Mary Dimaggio, all of whom were related by blood or marriage. (The names of the Wagner parties herein have been variously spelled in the record and in the briefs on appeal as Wagner or Waggoner. For the sake of convenience, the name Wagner will be used in the majority and dissenting opinions.)

---

[1]Plaintiff asserts the first action (CI 192927) was filed separately from the second because the mechanic's liens were filed on the two properties in the first action approximately one month before the liens were filed on the properties involved in the second action and the time to file suit on the two mechanic's liens involved in the first action would have run before plaintiff would be able to complete preparations for filing a complaint on the other eighteen mechanic's liens.

Several of the Woodside defendants (Woodside, Crestline Project No. 2, Crestline Project No. 4, Crestline Project No. 5, Ronald and Angelene Wagner, and Tony and Gertrude Creazzo)[2] had filed petitions in bankruptcy before the complaint was filed in the first action. Accordingly, the trustee in bankruptcy (who was the same for all these defendants) was also named as a party defendant.

The Woodside defendants, including the trustee in bankruptcy, accounted for 25 of the 28 named defendants in the first action. The other named defendants included the alleged owner or owners of each parcel, and the Bank of America, which was apparently the construction lender on each of the two construction projects involved in the first action.

As of September 6, 1984, plaintiff in the first action had either taken default against, dismissed the complaint as to, or been unable to serve 22 of the 28 defendants. The only defendants remaining in the action at that time were Michael and Madelyn Wagner, Anthony and Linda Dimaggio, Greg Seda (owner of one of the properties) and the construction lender Bank of America.

The second action (CI 193374) contained 64 causes of action against 51 named defendants. The 51 defendants named included virtually the same defendants as were named in the first action, and included all the Woodside-related entity and individual defendants. The additional defendants named in the second action consisted primarily of the alleged owners of the 18 parcels on which the projects were being constructed. Bank of America was again named as a defendant as the construction lender on 17 of the 18 projects. The construction lenders on the remaining project and a surety company were also named as defendants.

As in the first action, in the second action plaintiff had by September 6, 1984, either taken default against, dismissed the complaint as to or been unsuccessful in effecting service as to 36 of the 51 named defendants. The only defendants remaining in the second action at that time were Michael and Madelyn Wagner, Anthony and Linda Dimaggio, Gary and Debril Elliott (alleged owners of one of the parcels), Arthur and Shirley Glassman (alleged owners of another parcel and as to whom a settlement was reached and the complaint dismissed in October 1984), Makco and its principals, the Moores and the Koches (alleged owners of 3 of the parcels and as to all of whom a settlement was reached after the notices of appeal herein were

---

[2]A partnership known as Wagner, Rice and Dimaggio was also alleged in the complaint to have filed a petition in bankruptcy, but this partnership was not named as a party in the action.

filed), and the Bank of America (the construction lender on 17 of the 18 projects).[3]

During the pendency of the actions, in approximately December 1982 or January 1983, the bankruptcies of those defendants who had been in bankruptcy at the time the actions were filed concluded. In the meantime, however, in about February 1982, Michael and Madelyn Wagner and Anthony and Linda Dimaggio, the only remaining Woodside defendants in each action, had filed petitions in bankruptcy. *Those bankruptcies were still pending at the time of the motions here in question.*

## 3. *Plaintiff's Motions*

On August 24, 1984, approximately four years and ten months after the first action was filed, and approximately four years and nine months after the second action was filed, plaintiff filed an ex parte application in both proceedings for an order shortening time on a motion to sever as to the Wagners and Dimaggios who were still in bankruptcy and to specially set the case for trial. Plaintiff's ex parte motion for an order shortening time was denied.

Plaintiff then filed a regular notice of motion in both proceedings, to be heard September 13, 1984, for an order to sever the remaining defendants in bankruptcy and to specially set the case for trial. Defendant Bank of America asked plaintiff to consent to the bank's presentation of a motion to dismiss at the time set for the hearing on plaintiff's motions to sever and specially set. When plaintiff declined, Bank of America advised plaintiff it would nonetheless file a motion to dismiss and would ask the court to dismiss on its own motion.

The trial court denied plaintiff's motions to sever[4] and to specially set, and on its own motion dismissed the actions pursuant to former Code of Civil Procedure section 583, subdivision (a), for failure to bring the actions to trial within two years.[5]

---

[3]Bank of America is apparently related in some way to a named defendant, Continental Auxiliary Co., described in the complaint simply as a corporation. The attorneys for Bank of America on appeal also purport to represent the Elliotts and Continental Auxiliary. An examination of the complaint, however, reveals no charging allegations against Continental Auxiliary.

[4]The trial court's order never expressly addressed the motion to sever; the motion was denied by implication.

[5]The trial court's order in each case stated: "The Court respectfully denies Plaintiff's motion to specially set the case for trial. To so set would require the court to disrupt its orderly process in the disposition of civil and criminal cases. It would require a special Trial Setting Conference and a Mandatory Settlement Conference. It would require an Assignment Calendar date

Plaintiff moved for reconsideration of the court's ruling and to vacate the dismissals. The trial court denied the motions.

## Contentions

Plaintiff contends on appeal the trial court abused its discretion in dismissing the actions. In particular, plaintiff contends it prosecuted the actions as diligently as it could, defendants failed to show any prejudice from delay, and the pendency of the bankruptcy proceedings and the interrelated nature of the causes of action and claims made it impossible, impracticable or futile to bring the actions to trial earlier. Plaintiff further contends the trial court should have granted its application for an order shortening time and abused its discretion in refusing to specially set the cases for trial.

Defendants Bank of America and Gary and Debril Elliott contend the court's dismissal on its own motion was proper because plaintiff did not diligently pursue the actions, because plaintiff failed to establish any excuse for failing to bring the matters to trial or any impracticability in bringing the cases to trial, and because Bank of America and other defendants were prejudiced by the delay.

## Discussion

■ The trial court dismissed the actions on its own motion pursuant to former Code of Civil Procedure section 583, subdivision (a),[6] which at the time of the hearing provided: "The court, in its discretion, on motion of a party or on its own motion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years

---

and trial date prior to November 28, 1984. The complexity of the two files, the number of causes of action, the number of parties still left, and the lack of preparation by all sides would make a settlement conference meaningless. A trial date would be impossible to set with any certainty as to the length of trial. Due process works two ways, and to set cases such as these would unfairly impact not only the court and other diligently prepared, ready cases, but also the defense sides of the case as well.

"The Court, further, on its own Motion, and after diligent review of the file, dismisses the action under 583(a) of the Code of Civil Procedure. This case is not prepared from the standpoint of pleadings, current status of the parties, discovery, or any settlements [sic] efforts. Plaintiff has totally failed to pursue its rights. It has, instead, sat back on its case, allowing the passage of time to erode some of the case. This does not, in the Court's opinion, justify it now coming in and claiming it has somehow benefited the case management. There has been no diligence; nor would the utmost diligence at this point allow sufficient preparation for trial."

[6]Former Code of Civil Procedure section 583, subdivision (a), was repealed by Statutes 1984, chapter 1705, section 4. Its provisions were replaced by present section 583.110 et seq., particularly §§ 583.410-583.430. (Stats. 1984, ch. 1705, § 5.)·

after it was filed. The procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council."

At the time of the hearing on the motions, California Rules of Court, rule 373(e), enumerated factors a trial court must consider in deciding whether or not to dismiss an action under section 583, subdivision (a).[7] (See *Dockery v. Hyatt* (1985) 169 Cal.App.3d 830 [215 Cal.Rptr. 488]; *Visco v. Abatti* (1983) 144 Cal.App.3d 904 [192 Cal.Rptr. 833].)

The trial court here did purport to consider the factors enumerated in rule 373(e). The court acknowledged the actions were complex because of the number of parties and causes of action. However, the court stated in its order that the case was not ready for trial from the standpoint of pleadings, current status of the parties, discovery or settlement efforts; plaintiff had totally failed to pursue the case; and the passage of time had eroded some of the case. The court further observed in connection with the denial of the motion to specially set[8] that granting the motion would require special pretrial proceedings, a trial date would "be impossible to set with any certainty as to the length of trial" and specially setting these cases would unfairly impact on other litigations. (See fn. 5, *ante.*) These findings of the trial court, however, are simply not supported by the record or the evidence.

Although the court file did not reflect much activity up to the time of the motions, as is detailed in the margin[9] the affidavits of the parties in support

---

[7]California Rules of Court, rule 373(e), formerly provided: "In ruling on the motion the court shall consider all matters relevant to a proper determination of the motion, including the court's file in the case and the affidavits and declarations and supporting data submitted by the parties and, where applicable, the availability of the moving party and other essential parties for service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial; whether the interests of justice are best served by dismissal or trial of the case or by imposing conditions on its dismissal or trial; and any other fact or circumstance relevant to a fair determination of the issue."

[8]The factors considered by a court on a motion to specially set are essentially the same as those considered on a motion to dismiss. (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 561 [194 Cal.Rptr. 773, 669 P.2d 9].)

[9]The court files, which may be considered by the court in ruling on the motion, contained the complaint in each case, the returns of summons as to a number of the defendants, including affidavits of due diligence reflecting substituted service or inability to effect service on some

of and in opposition to the motions to sever and specially set and to reconsider and vacate the dismissals contained an abundance of facts bearing on

of the defendants, as well as dismissals or defaults as to some of the defendants. The great bulk of the dismissals and defaults in the first action were filed on or about September 6, 1984, after the ex parte motion for an order shortening time, but before hearing on the motions to sever and specially set. In the second action, the bulk of the dismissals and defaults occurred in August 1984, at about the time plaintiff applied for the order shortening time. The defaults and dismissals entered did not reflect any settlement negotiations or stipulated judgments. Similarly, the files did not reflect any discovery activity. The deficiencies in the files, however, were supplied by the information in the affidavits filed by the parties.

*Availability of the parties for service.* Plaintiff's declarations alleged the large number of defendants caused problems in effecting service of process, some defendants deliberately evaded service, some defendants were difficult to locate (and some were never located), and some had to be served by substitute service, yet service was eventually effected on 24 of the 28 defendants in CI 192927 and 46 of 51 defendants in CI 193374. No contradictory facts were presented in defendants' declarations.

*Extent of settlement negotiations between the parties.* Plaintiff's declarations showed plaintiff had entered defaults against numerous parties, many after settlement negotiations. Plaintiff had negotiated 11 settlements which resulted in substantial monetary payments to plaintiff, and had obtained one stipulation for judgment. In all, defaults were entered as to 15 parties in one case and 16 parties in the other. Dismissals were also entered as to 6 defendants in the first case and 17 defendants in the second, largely as a result of negotiations.

Bank of America averred it had discussed settlement with plaintiff briefly, but did not conduct any further discussions after plaintiff failed to answer a letter in 1983. Plaintiff's declaration stated, however, that plaintiff's counsel did not receive the letter and, in any event, it was Bank of America which put off settlement discussions because it had not completed its investigation, which it admitted was still not completed at the time of the motions for special setting. Plaintiff's counsel produced a letter from Bank of America's attorney which supported this contention. Plaintiff's declaration also attacked Bank of America's assertion plaintiff had expressed no interest in settlement, pointing out that the attorney averring that plaintiff had not conducted settlement discussions was not in fact the attorney of record for Bank of America and, although the parties acquiesced in the attorney's representation of Bank of America on motion matters, plaintiff's counsel's primary contact with Bank of America was not with that attorney. In fact, the record shows that the attorney making the averment was never substituted in as counsel of record for Bank of America.

The declaration of the attorney for Makco and its principals reveals that there was one exchange of letters and/or telephone calls in both 1981 and 1982 concerning settlement with respect to those defendants. ( Settlement was, in fact, ultimately reached as to those parties after the appeals herein were filed.)

*Diligence in pursuing discovery.* Plaintiff's declarations asserted it had answered interrogatories from Bank of America in 1980, and had served interrogatories on the bank in 1983, which the bank answered. Plaintiff conducted a lengthy 3-day deposition of a bank employee in September 1980, and the bank had produced a large number of other documents as well as 77 exhibits in connection with the deposition. Plaintiff had also obtained and reviewed thousands of pages of title company documents, financing documents and other documents relating to the constructions. Plaintiff further averred that, even though Bank of America failed to answer another set of interrogatories (after requesting extensions to answer), plaintiff had obtained the information from other sources, and in fact plaintiff had completed its discovery.

*Complexity of the cases.* The complexity of the cases was obvious on the face of the complaints because of the number of defendants and causes of action, and the bankruptcies added to the complexity of the case. Both cases together involved 20 building projects on 20 parcels of property. Each project involved at least two and more often three interrelated causes of action: for money due and owing; for foreclosure of mechanic's lien (which relied on the

the enumerated criteria. (See *City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543, 553-554 [133 Cal.Rptr. 212], on the propriety of considering matters raised on a motion to reconsider that were not made part of the record on the motion to dismiss.)

The affidavits showed without contradiction that plaintiff had completed its pleadings and discovery. It also appears without contradiction that, because of the defaults and dismissals negotiated by plaintiff, the only parties remaining in the first action were the 4 Wagner/Dimaggio bankruptcy defendants, Greg Seda and Bank of America (6 of 28), and the only parties remaining in the second were the Wagner/Dimaggio defendants who were in bankruptcy, the Elliotts, the Glassmans, the Makco defendants and Bank of America (14 of 51). The affidavits further showed without contradiction that plaintiff had had numerous settlement negotiations with a large number

proof of the debt in the money due causes of action and which involved proof relating to the stop notice causes of action on the issue of priority of liens); and to enforce stop notices to withhold construction loan funds (which relied on the same proof to the money due causes of action and some elements of the mechanic's lien causes of action). The parties were interrelated as well. Woodside was the contractor on all the projects. Its construction lender on 19 of the 20 projects was Bank of America. The individuals allegedly liable for Woodside's activities as contractor were numerous and interrelated. In addition, in connection with the mechanic's lien causes of action, several different Woodside defendants were owners of some of the parcels sought to be foreclosed upon, and Woodside defendants allegedly claimed an interest in each of the properties. The priority of Bank of America's construction loan was in issue with respect to all but one of the mechanic's liens, and the bank's conduct in allegedly prematurely discharging construction loan funds after the stop notices were served affected both the mechanic's lien and the stop notice causes of action with respect to each property. The dealings between Woodside and Bank of America on all the projects were a common thread to both lawsuits and the parties and issues were common to many of the causes of action.

*Pendency of other litigation under common facts.* Plaintiff's declarations averred and, indeed, it was apparent on the face of the complaint, that several Woodside defendants had pending bankruptcies which involved the very claims at issue in these cases. The court was also apprised of the Wagner/Dimaggio bankruptcies which arose after the suits were filed and which also involved plaintiff's claims. In addition, it was uncontradicted that the Wagners and Dimaggios were pursuing a separate suit against Bank of America related to the claims herein, which delayed the resolution of the four Wagner/Dimaggio bankruptcies. The resolution of the claims in bankruptcy would have affected and simplified the issues in the two actions; for example, the bankruptcy court's determination of the validity of plaintiff's claims as a creditor would be res judicata between the parties in the two actions below.

*Extensions of time or other delay attributable to either party.* Plaintiff's declarations point out that Bank of America was granted several extensions of time in which to file answers to the complaints, and Bank of America four times asked for extensions of time to answer a set of interrogatories which ultimately were never answered.

With respect to delays attributable to plaintiff, counsel for the Makco defendants stated that, after their answer was filed in July 1980, the parties exchanged one letter and one telephone call about settlement in 1981, two letters in 1982, and a telephone call in June 1984. The delay consisted simply in an absence of action perceptible to those defendants. Bank of America stated it was unaware of any of defendants' negotiations. The delay as to it likewise consisted of lack of perceptible action, although much activity as to other defendants was taking place.

of parties which had resulted in substantial monetary payments, defaults and dismissals. Only with respect to Bank of America and the Makco defendants was there any even arguably conflicting evidence with respect to settlement efforts. As to Bank of America, however, plaintiff averred and provided documentary support that it was Bank of America and not plaintiff which did not pursue settlement, and the record shows that the attorney purporting to represent Bank of America who averred he had not had settlement discussions with plaintiff was not in fact the attorney of record for Bank of America. Even counsel for the Makco defendants acknowledged an exchange of letters and/or telephone calls in 1981 and a similar exchange in 1982 on the subject of settlement. Plaintiff's affidavits established that plaintiff did not "totally fail to pursue the case" but in fact was able through ongoing efforts to settle and eliminate substantial portions of the case. ■■■■

The only evidence of possible erosion of the case was a reference by counsel for the Makco defendants to an unverified report to him from one of his clients that one unnamed potential witness had died.

The court did not specify in its ruling any particular condition of its calendar that would prevent setting the case for trial. It referred only to the difficulties that generally inhere in specially setting a case: deferring resolution of other cases and attempting to complete all necessary pretrial procedures so as to get to trial before the running of an apparently imminent five-year statute (former Code Civ. Proc., § 583, subd. (b)). (See fn. 5, *ante*.)

■ While the issues of plaintiff's diligence and prejudice to the defendant resulting from any delay are not expressly mentioned in the factors enumerated in rule 373(e), these issues must also be taken into consideration in ruling on and in reviewing a ruling on a motion to dismiss pursuant to former section 583, subdivision (a). (See *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 332 [216 Cal.Rptr. 718, 703 P.2d 58]; *Hilburger* v. *Madsen* (1986) 177 Cal.App.3d 45, 50-52 [222 Cal.Rptr. 713]; *Tannatt* v. *Joblin* (1982) 130 Cal. App.3d 1063 [182 Cal.Rptr. 112].) ■ Here the facts show considerable diligence and little or no prejudice. The affidavits in support of and in opposition to the motions showed the following with respect to the issues of plaintiff's diligence or prejudice to the defendants:

Plaintiff has completed all its discovery, including a 3-day deposition of a bank employee and a review of 77 exhibits submitted with the deposition; plaintiff reviewed numerous other documents produced by the bank; plaintiff had hundreds of telephone calls about these cases and had obtained and reviewed thousands of pages of documents related to the financing and construction on the projects as well as title company documents. Plaintiff's counsel averred he had personally spent 159 hours on the case, associates

and legal assistants had spent an additional 126 hours and secretarial staff had also spent substantial work time on these cases. A total of 285 hours was accounted for.

The large number of defendants in itself required extra time to effect service of process and some defendants evaded service, yet ultimately service was effected on 24 of 28 defendants named in the first action and 46 of 51 named in the second; plaintiff conducted settlement negotiations with a large number of parties, which resulted in dismissal of 6 defendants in the first action, and 17 defendants in the second; ongoing settlement negotiations also resulted in defaults taken against 15 defendants in the first action and 16 defendants in the second; 11 settlements were reached which resulted in substantial monetary payments to plaintiff; plaintiff's counsel engaged in substantial correspondence and made hundreds of telephone calls to achieve these results; trial counsel monitored the bankruptcy proceedings of the approximately 10 Woodside-related defendants who were in bankruptcy at the time of the commencement of the actions and participated in meetings of creditors; those bankruptcy defendants, whose bankruptcies terminated in December 1982 and January 1983, were among the defendants against whom defaults were entered as a result of negotiations between the parties.

Several of the properties were owned by one of the chief Woodside defendants, Ronald Wagner, who was one of the original bankruptcy defendants. Plaintiff's claims were a major part of the claims in bankruptcy and plaintiff averred that the bankrupt estates in the already pending cases appeared to be sufficient to provide a substantial satisfaction of the claims. Plaintiff attempted to resolve these matters within the bankruptcy proceedings and those proceedings were concluded in December 1982 and January 1983. In the meantime, however, four other major Woodside defendants, Michael and Madelyn Wagner and Anthony and Linda Dimaggio, had filed bankruptcy petitions in February 1982. These defendants were alleged to be personally liable for all the money due and owing, a total of $159,754.28. These defendants also owned some of the parcels involved in the cases.

Bankruptcy counsel for the Wagners and Dimaggios in northern California informed plaintiff he would not agree to termination of the bankruptcy stay. Plaintiff's attorney consulted with counsel in the local area in which the bankruptcy proceedings were pending to ascertain the feasibility of moving for relief from the bankruptcy stay and was advised the bankruptcy court would be very unlikely to grant relief from the stay. In addition, the Wagners and Dimaggios were pursuing a separate suit against Bank of America which was related to the claims herein, and which delayed resolution of those four bankruptcies. Accordingly, the four Wagner/Dimaggio bankruptcies, which arose in 1982 after the complaints were filed, were still pending at the time

of the motions herein. *Bankruptcy proceedings, with the attendant bankruptcy stays, were thus in effect at all times with respect to various defendants since the time the complaints were filed in these two actions.*

Bank of America demonstrated no prejudice it had suffered as a result of the delay. It averred that after plaintiff answered the bank's interrogatories and deposed the bank employee in 1980, and after the bank answered plaintiff's interrogatories in 1983, Bank of America was unaware of any activity taken by plaintiff in the case and no at issue memorandum was ever filed. As a result of the lack of activity, it was asserted Bank of America had not completed its discovery and so the bank argued it would be prejudiced by a special setting of the cases for trial. The bank further urged that plaintiff was at all times aware of the bankruptcies of the Woodside defendants, but did not move for relief from the bankruptcy stay, choosing instead to await the outcome of the bankruptcies. In addition, the bank argues plaintiff was aware of the Wagner/Dimaggio bankruptcies since February 1982, but "did not wish to move to sever" the causes of action related to those defendants. Bank of America also points out plaintiff admitted in its declarations it would have been possible to try the lawsuits separately as to Bank of America, but no motion for severance was ever made before August 1984 and no justification was given for failing to seek a severance.

Counsel for the Makco defendants averred his defense was prejudiced because he had lost contact with his clients and because one of the clients once told him a witness in the case (unidentified in the declaration) had died in the meantime.

Finally, counsel for defendants Glassman, owners of one of the parcels, argued they would be prejudiced by the motion to specially set because the action was unmeritorious in that they had a complete defense based on the filing of a notice of completion before the mechanic's lien was filed. Plaintiff averred in response, however, that the notice of completion was invalid because filed before the actual completion.

The averments in defendants' declarations do not amount to a showing of prejudice. Presumably Bank of America, which had already initiated its own discovery, had the means in its own hands of completing any discovery it desired and, for that matter, of moving for severance from the other defendants. The Glassmans also had notice and the means at their disposal of preserving their defense, which was in any event disputed. Counsel for the Makco defendants arguably did show prejudice because of loss of contact with his clients; however, settlements were reached both with the Glassmans and with the Makco defendants, and they are not parties to the appeal.

Finally, we agree with plaintiff that whatever delay occurred in the trial of these cases resulted from the impracticability if not legal impossibility of bringing them to trial during the pendency of the bankruptcy stays. Indeed, it appears the circumstances were such as would toll the running of even the mandatory five-year statute (former § 583, subd. (b)).

Defendants argue plaintiff could have severed the causes of action against Bank of America and the Elliotts and tried them separately while the bankruptcies were pending, particularly because plaintiff was aware of some of the bankruptcies even before the complaint was filed.[10] Therefore, the bank argues it was not impossible, impracticable or futile to proceed against it and the Elliotts.

Bank of America relies on *Lane* v. *Newport Bldg. Corp.* (1986) 176 Cal.App.3d 870 [222 Cal.Rptr. 443] for the proposition that the bankruptcy of one defendant does not make it impracticable to proceed against other defendants. In that case, however, as the court pointed out, the plaintiff could have taken but did not take any action to prevent the five-year statute from running. The plaintiff could have advised the trial court of the problem relating to the defendant in bankruptcy, asked for a stipulation to extend the deadline, moved to specially set, moved to sever, or sought relief from the stay, but did none of these things. Instead, the plaintiff acquiesced in the court's setting a trial date beyond the five-year period because he "assumed" the bankruptcy stay against one defendant would toll the five-year limit.

Here, the trial court was presumably aware from the inception of the actions that a number of important defendants were in bankruptcy. Further, plaintiff reasonably investigated possible relief from the stay but was advised by competent counsel from the local jurisdiction that relief would be very unlikely. And, ultimately, within the five-year period, plaintiff did move to specially set and to sever, which motions the trial court denied.

At the time plaintiff applied for an order shortening time on the motion to sever and to specially set, which order shortening time plaintiff could reasonably have expected to be granted (*Campanella* v. *Takaoka* (1984) 160 Cal.App.3d 504, 510-511 [206 Cal.Rptr. 745] (disapproved on other grounds in *Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 346 [228 Cal.Rptr.

---

[10]It is unclear whether the trial court in its orders intended to dismiss the entire action as to all defendants. It would appear from the language of the orders that dismissal as to all defendants was ordered. Clearly, as to the four Wagner/Dimaggio defendants who were in bankruptcy and as to whom all claims were stayed, dismissal was improper. Obviously, as to them, it was impossible for plaintiff to proceed. Dismissal was also clearly improper as to those defendants whose defaults had been taken.

504, 721 P.2d 590])), there were 66 days in the first action and 96 days in the second action, respectively, remaining before the running of the 5-year statute. The trial court denied the motion to sever thereby preventing severance of the bankruptcy defendants, as to whom the actions were unquestionably stayed and against whom it was legally impossible to proceed. By denying the motion to sever those defendants the trial court rendered it legally impossible to proceed against *any* defendants in the cases.[11]

■ Moreover, what is impossible, impracticable or futile must be determined in the light of all the circumstances of the particular case. Severability in a legal sense is not the test of impossibility or impracticability: it is impossible, impracticable or futile to proceed when it is impracticable due to excessive and unreasonable difficulty or expense. (*Brunzell Constr. Co.* v. *Wagner* (1970) 2 Cal.3d 545, 551-552 [86 Cal.Rptr. 249, 468 P.2d 553].) The determination is based on such factors as expense, complexity, the quantity of evidence that would have to be duplicated, potential problems of inconsistent results, and the degree of hardship to the defendants as a result of the delay. (*Ibid.*)

■ Here, although plaintiff admitted it was theoretically possible to try the lawsuits separately against the Bank of America and the Elliotts, it would thereby have been required not only to try the suits separately against the bank, but in addition would still ultimately have had to separately try the numerous mechanic's lien causes of action, as well as all the money-due causes of action, resulting in enormous monetary expense and an outrageously duplicative waste of the court's resources.

Both cases together involved 20 building projects on 20 parcels of property. Each project involved at least two and more often three interrelated causes of action: for money due and owing; for foreclosure of mechanic's lien (which relied on the proof of the debt in the money-due causes of action and which involved proof relating to the stop notice causes of action on the issue of priority of liens); and to enforce stop notices to withhold construction loan funds (which relied on the same proof to the money due causes of action and some elements of the mechanic's lien causes of action). The parties were interrelated as well. Woodside was the contractor on all the proj-

---

[11]*Maximum Technology* v. *Superior Court* (1987) 188 Cal.App.3d 935 [233 Cal.Rptr. 733] suggests that a case may be at issue as to a defendant not in bankruptcy even though another defendant is in bankruptcy. The posture of that case is, however, different from the posture in the instant case—in *Maximum Technology* plaintiff was seeking to proceed to trial against the defendants not in bankruptcy. Perhaps the key factor in the appellate court's conclusion that the defendant in bankruptcy in that case was not an essential party under California Rules of Court, rule 209(a)(3), for purposes of filing of an at issue memorandum was that the case was at issue as to another defendant who was alleged to be the bankruptcy defendant's alter ego, so that full relief would be available in the suit against the parties not in bankruptcy.

ects. Its construction lender on 19 of the 20 projects was Bank of America. The individuals allegedly liable for Woodside's activities as contractor were numerous and interrelated. In addition, in connection with the mechanic's lien causes of action, several different Woodside defendants were owners of some of the parcels sought to be foreclosed upon, and Woodside defendants allegedly claimed an interest in each of the properties. The priority of Bank of America's construction loan was in issue with respect to all but one of the mechanic's liens, and the bank's conduct in allegedly prematurely discharging construction loan funds after the stop notices were served affected both the mechanic's lien and the stop notice causes of action with respect to each property. The dealings between Woodside and Bank of America on all the projects were a common thread to both lawsuits and the parties and issues were common to many of the causes of action.

*Marcus* v. *Superior Court* (1977) 75 Cal.App.3d 204 [141 Cal.Rptr. 890], involving a stay for arbitration proceedings, supports the proposition that, even where some causes of action are technically severable, a stay may be appropriately applied to all the causes of action. In that case petitioners were entitled to a stay pending resolution of arbitration, even though they were not parties to the arbitration agreement; and the five-year statute could not run while the stay was in effect.

We also note the decision in *Tannatt* v. *Joblin, supra,* 130 Cal.App.3d 1063. There the plaintiff's forbearance of service of process on some of the defendants until after conclusion of the case against the primary defendant and efforts to obtain satisfaction from that defendant proved ineffectual was held justified because of the relative liability of the defendants. The defendants not served were only secondarily liable; if the plaintiff had been able to collect from the primarily liable defendant, the action need never have proceeded against the secondarily liable defendants. The court also held the plaintiff should not be penalized for bringing one action rather than two. While *Tannatt* does not address the issue of impossibility or impracticability of proceedings, the potential judicial economy of proceeding in a single action against the defendants rationally assessed to be primarily liable was recognized as a justification for delay. In the instant case, plaintiff likewise should not be penalized for bringing all its claims in one action rather than 20.

Thus, even if the claims against Bank of America and the Elliotts might technically have been severable, analysis of the factors enumerated in *Brunzell Constr. Co.* v. *Wagner, supra,* 2 Cal.3d 545, establishes it was impracticable to proceed to trial of the actions while the bankruptcies of the various indispensable parties were pending. And as already observed, the trial court's ruling denying the motion to sever rendered it legally impossible

to proceed. The delay in bringing the action to trial was fully justified and, particularly in the absence of any showing of prejudice by the remaining defendants, the policy of the law favoring trial on the merits mandated that the motion to dismiss be denied. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *Hilburger* v. *Madsen, supra,* 177 Cal.App.3d 45; *Troupe* v. *Courtney* (1985) 169 Cal.App.3d 930 [215 Cal.Rptr. 703].)

*Disposition*

For the reasons stated, the orders of dismissal are reversed and the trial court is directed to set the cases for trial.

McDaniel, J., concurred.

**RICKLES, J.**\*—I respectfully dissent from the majority's conclusion the trial court abused its discretion in dismissing plaintiff's two actions against the Bank of America.

The majority loses sight of the criteria previously utilized by this court when determining abuse of discretion by the trial court in granting a motion to dismiss, pursuant to Code of Civil Procedure section 583, subdivision (a).[1]

A brief factual background is necessary to explain why I refused, unlike the majority, to substitute my judgment for that of the trial court's.

I

On October 29, 1979, plaintiff filed a complaint (San Bernardino County Super. Ct. No. 192927) naming Bank of America NT&SA and 27 other defendants. The principal defendants, Woodside Construction Co., Crestline Two, Crestline Four, Crestline Five and all the partners of these entities were in bankruptcy before this complaint was filed.[2] These bankruptcies terminated on January 6, 1983. Plaintiff sought "money due and owing" and foreclosure of two mechanics liens.[3] Defendant bank agreed to accept service in

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] Unless otherwise indicated, all section references in this opinion are to the Code of Civil Procedure.

Section 583, subdivision (a), provided in pertinent part: "The court, in its discretion, ... may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed."

[2] Woodside Construction Co. was the construction company and the general contractor primarily responsible for all of the debts sued upon.

[3] Plaintiff's causes of action against Bank of America were based on defendant bank's failure to withhold sufficient funds after plaintiff served it stop notices and defendant bank's failure to pay money assigned to plaintiff.

August 1980. Subsequently, on October 29, 1982, after receiving a series of extensions, defendant bank filed its answer. As of August 24, 1984, the only defendants who had not been defaulted or dismissed were Michael and Madelyn Wagner and Anthony and Linda DiMaggio (all of whom had petitioned for bankruptcy in Feburary 1982), Greg Seda and Bank of America.[4]

Plaintiff filed a parallel complaint (San Bernardino County Super. Ct. No. 193374) on November 28, 1979, again naming Bank of America and 50 other defendants.[5] Bank of America's answer is dated March 6, 1980. As of August 29, 1984, the only defendants who had not been defaulted or dismissed were Michael and Madelyn Wagner and Anthony and Linda DiMaggio (all of whom had petitioned for bankruptcy in February 1982), Arthur and Shirley Glassman (with whom settlement had been agreed and dismissal was entered shortly thereafter), Makco and its principals (with whom settlement had been reached after notice of appeal was filed), and Bank of America.

On August 24, 1984, approximately four years and ten months after the first action was filed and four years and nine months after the second action was filed, plaintiff brought an ex parte application in both proceedings for an order shortening time on a motion to sever certain defendants and a motion to specially set the case for trial. Plaintiff's ex parte motions were denied.

On August 30, plaintiff filed a notice of motion to be heard on September 13, 1984, for an order severing certain defendants and specially setting the case for trial. Bank of America requested plaintiff consent to hear a motion to dismiss along with plaintiff's motion to sever and specially set. Plaintiff refused to consent. Bank of America then advised plaintiff it would file a motion to dismiss and request the court on September 13 dismiss the action on the court's own motion.[6]

The court denied the plaintiff's motions to specially set and, on its own motion, dismissed the actions under section 583, subdivision (a).[7]

Plaintiff appeals, contending the trial court abused its discretion by denying its motions to shorten time and specially set. Also, plaintiff asserts the trial court abused its discretion by dismissing the actions on its own motion.

---

[4]Michael Wagner and Anthony DiMaggio were also pursuing an action against Bank of America. Plaintiff claimed the resolution of that action was holding up the bankruptcy proceedings with respect to Wagner and DiMaggio.

[5]See footnotes 2 and 3, *ante.*

[6]Bank of America filed a motion to dismiss September 12, 1984, and requested the court dismiss on its own motion.

[7]The dismissal only concerned the defendant, Bank of America.

## II

Motions to specially set a case for trial and motions to dismiss pursuant to section 583, subdivision (a), invite inquiry into the same factors. (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 560-561 [194 Cal.Rptr. 773, 669 P.2d 9].) "The similarity between the two motions is explained in *Beswick* v. *Palo Verde Hospital Assn.* (1961) 188 Cal.App.2d 254, 260 [10 Cal.Rptr. 314]: 'In passing upon the motion for an early and preferential setting, the court was not limited to a consideration of the single fact that the five-year period was about to expire but was required to view the total picture, including the dilatory action of the plaintiff, the condition of the court's calendar, the rights of other litigants, and the prejudice to the defendant resulting from the delay. [Citations.] *The action of the court on such a motion is tantamount to action upon a motion to dismiss for failure to prosecute within the two-year period prescribed by section 583 of the Code of Civil Procedure; in each instance the motion is addressed to its sound legal discretion; the motivating factors in the exercise of that discretion would be pertinent to both motions;* and its decision "will be disturbed only in cases of manifest abuse." ' [Italics added.]" (*Wilson* v. *Sunshine Meat & Liquor Co., supra,* 34 Cal.3d at p. 561. See also *Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 346-347 [228 Cal.Rptr. 504, 721 P.2d 590].)

This court announced the applicable standard of appellate review in *Lopez v. Larson* (1979) 91 Cal.App.3d 383, and affirmed its position in *Hoffman v. State of California* (1985) 171 Cal. App.3d 1100 [217 Cal.Rptr. 867]. In *Hoffman,* we reiterated: " 'While it is true that an order granting a motion to dismiss for dilatory prosecution will be more closely scrutinized on review than one denying the motion [citations], nevertheless the trial court exercises a wide discretion in ruling on a motion to dismiss under Code of Civil Procedure section 583, subdivision (a) and its determination will be reversed only upon a showing of manifest abuse of discretion resulting in a miscarriage of justice. [Citations.] The discretion to be exercised is that of the trial court, not that of the appellate court. [Citations.] Discretion is abused only when the court exceeds the bounds of reason, all of the circumstances before it being considered. [Citations.]' [¶] ' "... The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown ... a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." [Citations.]' [Citation.]" (*Hoffman* v. *State of California, supra,* 171 Cal.App.3d at pp. 1105-1106.) Further, as suggested by *D'Hondt* v. *Regents of University of California* (1984) 153 Cal.App.3d 723, 731 [200 Cal.Rptr. 628], it is reasonable to expect a greater showing of excuse the older the case gets.

In light of this authority, two questions arise: Did the plaintiff diligently process its claims against Bank of America? Was the delay in processing the

cases reasonable? The simple answer to both questions is "No." The records show a total lack of diligence without any redeeming excuse.

The records in both cases fail to demonstrate diligence. In the first action, plaintiff's statement of facts, delineating its expended efforts, indicates plaintiff deposed a Bank of America employee who had primary responsibility for the transaction involved in the litigation and examined "hundreds" of documents. This deposition was taken on *September 22, 1980,* and covered 208 pages and 77 exhibits. The Bank of America produced numerous other documents not part of the record. Plaintiff also served defendant bank with interrogatories, which, after extensions were granted, were never answered. Finally, plaintiff suggests it "was anxious and willing at any time to reach a settlement with respondent Bank had its counsel given the slightest encouragement to continue such discussions."

Plaintiff's activities in the second action correspond to its activities in the first. Plaintiff relies upon its deposition of the Bank of America employee, mentioned above. Plaintiff propounded interrogatories to Bank of America on April 5, 1983. Defendant bank answered these interrogatories on June 6, 1983. Plaintiff again indicates it was anxious and willing to settle had Bank of America given any encouragement.[8]

Plaintiff argues its diligence is clearly revealed in both actions. It bases this assertion on its naming 28 defendants in the first action and 51 defendants in the second, and the difficulties entailed in locating, serving, and negotiating with each party. It notes it successfully reduced the number of defendants from 28 to 2 in the first action and from 51 to 4 in the second action. Plaintiff fails to explain why no action was taken for over 19 months after termination of the Woodside et al. bankruptcies on January 6, 1983. Plaintiff fails to explain why it failed to foreclose on the mechanics liens for over four and a half years and allowed the titles to be clouded by inaction.[9] Nor does plaintiff have any explanation for the failure to sever out the Bank of America for the same period of time. In the course of 5 years, plaintiff's counsel, counsel's associates and legal assistants spent only 285 hours on cases involving 79 defendants.

The prejudice to the record titleholders and the Bank of America was skillfully avoided in the attempt to justify the delay by allegedly indulging in four

---

[8]Plaintiff does not indicate why it did not make use of the settlement program provided by this court.

[9]Civil Code section 3147 provides:

"If the action to foreclose the lien is not brought to trial within two years after the commencement thereof, the court may in its discretion dismiss the same for want of prosecution."

and a half years of settlement negotiations. Any delay occasioned by Bank of America's failure to negotiate does not relieve plaintiff of proceeding diligently with its lawsuit.[10] (See *Cameron v. Cameron* (1952) 110 Cal. App.2d 258, 261-262 [242 P.2d 408].)

Plaintiff further attempts to justify its inaction in both cases by waiting on the outcome of the various bankruptcy proceedings. "Counsel for appellant [plaintiff] reviewed in depth the petition, schedules, and statement of affairs of most of the defendants who had filed proceedings in bankruptcy, and also attended meetings of creditors. The claim of appellant [plaintiff] represented over one-half of the total claims in those bankruptcies, and it appeared quite possible that there would be sufficient bankrupt estate to permit payment of most of appellant's [plaintiff's] claim from the bankrupt estates, reducing any unpaid balance to an amount which would lend itself easily to settlement by negotiation if the parties would await completion of the bankruptcy administration."

Plaintiff's statement is somewhat disingenuous because it fails to advise that all of the main obligors had filed bankruptcy before these actions were filed. Plaintiff does not cite any case as to why counsel's assumption the bankruptcy would require a stay of the entire action was reasonable. (See *Lane v. Newport Bldg. Corp.* (1986) 176 Cal.App.3d 870 [222 Cal.Rptr. 443].)

Plaintiff had the choice of awaiting the conclusions in the bankruptcy proceedings, requesting the bankruptcy stay be vacated, or moving to sever defendants in bankruptcy. Had plaintiff proceeded with a timely motion to sever and had Bank of America resisted the motion, any delay could have then been imputed to the bank and not plaintiff. Plaintiff's choice was within its control and does not excuse the failure for over four and a half years to pursue claims against defendants who have not filed for bankruptcy. Bank of America was not an indispensable party and plaintiff concedes "[i]t may have been possible to sever the stop notice causes of action from the mechanic's lien causes of action, as well as sever all parties who were then in bankruptcy . . . ." This concession gains added relevance when considered with plaintiff's failure to proceed for over 19 months after termination of the Woodside et al. bankruptcies. I conclude plaintiff's conduct was unreasonable in waiting to see what would happen in the bankruptcy proceedings. I find plaintiff's "judicial efficiency argument" unpersuasive.[11]

Because plaintiff failed to make an adequate showing of excuse for the delay, there is no requirement a defendant affirmatively establish prejudice

---

[10]Affidavits in opposition to the motion to specially set indicate minimal settlement negotiations.

[11]Plaintiff contends it was assisting the court by attempting to settle without trial.

before the action may be dismissed for delay in prosecution. I am persuaded prejudice may be inherent in protracted delay, especially in the cases such as those at bar when plaintiff attempted to set the actions for trial with only 66 and 96 days before the 5-year statute ran. (*Hoffman* v. *State of California, supra,* 171 Cal.App.3d at p. 1109; *Lopez* v. *Larson, supra,* 91 Cal.App.3d at pp. 401-402.) Furthermore, even if defendant has not been prejudiced, " '[t]he legislative policy underlying section 583 is not grounded solely in prejudice caused by delay to a defendant. Its purpose, too, is to expedite the administration of justice by compelling every person who files an action to prosecute it with promptness and diligence.' [Citations.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 332 [216 Cal.Rptr. 718, 703 P.2d 58].)

The trial court's section 583, subdivision (a), order clearly makes reference to the criteria established in California Rules Court, rule 373(e).[12] I find no abuse of discretion. I would affirm the judgment dismissing plaintiff's action against Bank of America.

A petition for a rehearing was denied April 9, 1987.

---

[12]"The Court, further, on its own Motion, and after diligent review of the file, dismisses the action under 583(a) of the Code of Civil Procedure. This case is not prepared from the standpoint of pleadings, current status of the parties, discovery, or any settlement efforts. Plaintiff has totally failed to pursue its rights. It has, instead, sat back on its case, allowing the passage of time to erode some of the case. This does not, in the Court's opinion, justify it now coming in and claiming it has somehow benefited the case management. There has been no diligence; nor would the utmost diligence at this point allow sufficient preparation for trial."