[No. D012714. Fourth Dist., Div One. Oct. 31, 1991.]

RICHARD W. TRAWEEK et al., Plaintiffs and Appellants, v.
FINLEY, KUMBLE, WAGNER, HEINE, UNDERBERG, MANLEY,
MYERSON & CASEY et al., Defendants and Respondents.

[No. D012728. Fourth Dist., Div. One. Oct. 31, 1991.]

RICHARD W. TRAWEEK et al., Plaintiffs and Appellants, v.
MANATT, PHELPS, ROTHENBERG & PHILLIPS et al., Defendants and
Respondents.

**COUNSEL**

Girardi, Keese & Crane, Richard P. Crane, Jr., Barry I. Dunn and Merrick Scott Rayle for Plaintiffs and Appellants.

Fields & Hoffmann, Howard M. Fields, Debra Fischl, Armato, Gaims, Weil, West & Epstein, Alan Jay Weil, Steven S. Davis, Corey E. Klein, Gibson, Dunn & Crutcher, G. Edward Fitzgerald, Meryl L. Young and Marc J. Feldman for Defendants and Respondents.

## OPINION

**WIENER, Acting P. J.**—In the wake of an unsuccessful defense of a civil suit (see *Ballou* v. *Master Properties No. 6* (1987) 189 Cal.App.3d 65 [234 Cal.Rptr. 264]) and other matters, plaintiff Richard W. Traweek and related entities (collectively Traweek) filed two malpractice lawsuits against his former attorneys and accountants. In the first (the *Jacke* matter), Traweek sued the law firm of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey (Finley Kumble), Richard Williams (a Finley Kumble partner) and H. Clay Jacke, an attorney "associated as counsel" for Traweek with Finley Kumble and Williams in the *Ballou* action. In the second lawsuit (the *Manatt* matter) filed almost one year later, Traweek sued the law firm of Manatt, Phelps, Rothenberg & Phillips (Manatt Phelps), the accounting firm of Kenneth Leventhal & Company (Leventhal), and more than one hundred individuals who were former partners of Finley Kumble.

Approximately three weeks after the *Manatt* action was filed, Finley Kumble commenced chapter 11 bankruptcy proceedings in New York. By virtue of a temporary restraining order and later a preliminary injunction obtained by the bankruptcy trustee, the automatic stay was extended to litigation against the individual partners of Finley Kumble in March 1988. The bankruptcy court's order, however, specifically provided that it did not "preclude commencing, maintaining, or prosecuting litigation against any other co-defendant of the Debtor or of the Debtor's Partners . . . ." Thus in both cases, the action was stayed as to some defendants (Finley Kumble and the individual partners) but not others (Jacke, Manatt Phelps and Kenneth Leventhal).

Both the *Jacke* and *Manatt* actions were assigned to the San Diego Superior Court's "fast track" program (see generally *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 497-498 [256 Cal.Rptr. 296]) which calls for diligent court monitoring of the progress of the litigation. Fast track rules normally require the filing of a joint at-issue memorandum within 140 days of the filing of the answer. (Former San Diego County Super. Ct. Local Rule 10.7 (current rule 1.7).) Instead, Traweek filed certificates in both the *Jacke* and *Manatt* actions explaining that at-issue memorandums would not be filed because of the pending bankruptcy proceedings in New York. In both cases,

the court accepted Traweek's explanations and took the matter off calendar or otherwise stayed the proceedings.

In late 1989, the superior court issued orders to show cause why both cases should not be dismissed.[1] In the *Jacke* matter, after being continued several times the hearing was held on January 24, 1990. Traweek's counsel explained that the bankruptcy stay was still in effect as to Finley Kumble and Williams, and that it was impractical to proceed against Jacke, the sole remaining defendant. After Judge Jones indicated he was inclined to dismiss the case without prejudice, the following colloquy took place:

"THE COURT: Look, I'm not going to shoot this case in the head, I'm only going to give it anesthesia. I'm going to dismiss it without prejudice with leave to set aside the dismissal on good cause shown, as long as leave is filed within five years of the date of filing the complaint.

". . . . . . . . . . . . . . . . . . . . . . . . .

"We're sitting here monitoring a dead case that's being held in another forum where the statute is tolled as long as there's a bankruptcy stay; where once it's out of stay, you make a motion ex parte to set aside the dismissal because the matter is now again capable of being litigated here and we have jurisdiction.

"MR. TODD [Traweek's counsel]: But there is another defendant whose case isn't in front of the bankruptcy court in New York.

"THE COURT: I'm dismissing it as to that defendant and I'm sure he has no objection that it will be set aside. It will come back alive if they get out of the bankruptcy court. But it's an entirely different case if Finley, Kumble never gets out of bankruptcy court than it is if it stays in. And if they never get out, then you can move to set it aside, and if you want to prosecute this one other defendant, you can.

". . . . . . . . . . . . . . . . . . . . . . . . .

"I see no reason for us to wait and wait and call you down here and have people traveling down for a hearing in a court that has no jurisdiction because it's stayed, when all we do is dismiss it without prejudice to be set aside on good cause shown, as long as the motion's made within the five-year period, the date of the first filing. It just doesn't make sense for us

---

[1]We assume these orders were administratively generated since nothing had happened to suggest the status of the cases had changed.

to monitor a case in which somebody else has absolute control over it until we can do something.

"MR. TODD: Well, that's the point, your Honor. Everybody nationwide has worked diligently to get the process in place so we can do something on it.

"THE COURT: But you don't know what's going to happen. You don't know whether it's going to happen in February or June or December.

"MR. TODD: You're right. I don't know that.

"THE COURT: We'll have you down here every 45 days saying, 'How's it going?'

"Do you want me to do that?

"MR. TODD: I think that's a better alternative than dismissing the case.

"MR. SCHMELTER [Jacke's counsel]: I would prefer not to do that, your Honor.

"THE COURT: I'm going to dismiss it without prejudice with the dismissal to be set aside on good cause shown within five years of the date of filing. And that is dismissed as to all defendants without prejudice."

In the *Manatt* matter, confusion over a substitution of counsel resulted in no one appearing for Traweek at the hearing. This was brought to the court's attention by opposing counsel at the hearing, but Judge Jones explained he "would dismiss it even under objection." His reasoning was similar to that which motivated his dismissal of the *Jacke* action:

"I suspect that they will be coming back and moving to set aside. But why should we sit here and monitor this thing for maybe a year? And if it comes out of bankruptcy, fine, we'll open it up. That's good cause shown."

Traweek's new counsel filed an application to set aside the dismissal. In addition to explaining they had received no notice of the hearing, counsel indicated Traweek was willing to proceed to prosecute the action against the nonbankrupt defendants, i.e., Manatt Phelps and Kenneth Leventhal. In a minute order dated March 20, 1990, the court denied Traweek's application, again "without prejudice."

## DISCUSSION

In *Moyal* v. *Lanphear, supra,* 208 Cal.App.3d 491, this court considered the authority of the superior court to dismiss cases as a sanction for a plaintiff's failure to comply with local fast track rules. ▮ We observed that, consistent with "long-standing judicial policy," the Legislature has mandated that a dismissal sanction should be utilized "only if it appears less severe sanctions would not be effective . . . ." (*Id.* at p. 502.) Noting that a dismissal often forces the client to pay for the sins of the lawyer, we explained: "The drastic measure of dismissal should only be used where there is a clear showing that the client is the cause of counsel's failure to comply with local fast track rules, e.g., where the client will not cooperate with or supply necessary material to his or her attorney or where no other reasonable sanction will produce compliance with the rules and orders of the court." (*Id.* at p. 503.)

Defendants Manatt Phelps and Kenneth Leventhal attempt to cast this as a case in which the court finally dismissed an action after repeated failures by the plaintiff to comply with applicable local rules. Even if the record would support such a construction, dismissal would be inappropriate under the reasoning of *Moyal* because the court never sought to induce compliance by means of a sanction short of dismissal.

▮ The record makes clear, however, that the dismissal of this case had nothing to do with the plaintiff's failure to comply with the fast track rules. Indeed, the plaintiff here was never told he had done anything wrong. Rather, this is a case in which the superior court, for a time, was comfortable accepting the plaintiff's assertion that because each of the two actions was automatically stayed as to some defendants, it was impracticable to prosecute either action against the remaining nonbankrupt defendants. However, as the cases grew older the court became understandably concerned with the effect of an interminable bankruptcy stay on the management of its calendar. To deal with this issue the trial court placed such cases into a category entitled "dismissal without prejudice." This type of dismissal was not intended to be a *real* dismissal, but merely a method of dealing with such cases to dispense with the need for periodic court monitoring. The dismissal will be set aside if either (1) the bankruptcy stay is lifted, or (2) the plaintiff decides he can proceed separately against the nonbankrupt defendants, provided of course that the motion to set aside is brought within five years of the filing of the complaint.

We recently considered a variant of this "administrative dismissal" practice in *Sugimoto* v. *Exportadora de Sal, S.A. de C.V.* (1991) 233 Cal.App.3d 165 [284 Cal.Rptr. 275]. There, the superior court dismissed an action which

had been removed to federal court based on the same docket-clearing rationale proffered here. As the superior court judge explained to the plaintiff in that case, " 'You're only one of about 500 that we have done this to . . . . This is our administrative practice.' " (*Id.* at p. 167.) We held the dismissal was improper because the superior court lacked jurisdiction to do anything other than stay the action pending the resolution of the federal case.

For similar reasons, the court here lacked the power to dismiss these cases as to any of the defendants subject to the federal bankruptcy stay. The law is clear that a nonbankruptcy court may not dismiss but may only stay an action in which a defendant has filed for bankruptcy. (See, e.g., *Piel* v. *Harvard Interiors Manufacturing Co.* (8th Cir. 1974) 490 F.2d 1272 and *Chubb Pacific Indemnity Group* v. *Twin Lakes Village, Inc.* (1982) 98 Nev. 521 [654 P.2d 530], reversing dismissals without prejudice.)

As to the nonbankrupt defendants, while the court did not lack the power to dismiss, those dismissals were similarly inappropriate. The only issue before the court should have been whether it was impracticable for Traweek to proceed separately against the nonbankrupt defendants. If it was not, the court was obligated to provide Traweek with reasonable notice of his resumed obligations and a reasonable opportunity to comply. If it was impracticable, the actions should have been stayed as to those defendants as well. In either situation, the cases should have remained pending in the superior court. As we explained in *Sugimoto*, "A 'dismissal' and a 'stay' are not the same. When a court orders a 'stay', the action, although dormant, remains pending in that court. Following a 'dismissal' the action is no longer pending." (233 Cal.App.3d at p. 168.)

The fact that the court specified the conditions on which the dismissal would be set aside does not make it any more appropriate. Indeed, Traweek's agreement to one of those conditions—separately prosecuting the nonbankrupt defendants—inexplicably did not result in the setting aside of the dismissal when it was requested. (See *ante*, p. 1133.) Moreover, the court indicated it would only set aside the dismissal if the request was made within five years of the filing of the complaint. Yet subdivision (b) of Code of Civil Procedure section 583.340 specifically excludes from the five-year trial requirement any time during which "[p]rosecution or trial of the action was stayed or enjoined." In addition, the statutory "impracticability" exception (§ 583.340, subd. (c)) may extend to other nonbankrupt defendants as well. (See, e.g., *Rim Forest Lumber Co.* v. *Woodside Construction Co.* (1987) 190 Cal.App.3d 454, 468-470 [235 Cal.Rptr. 443]; cf. *Kaye* v. *Mount La Jolla Homeowners Assn.* (1988) 204 Cal.App.3d 1476, 1485 [252 Cal.Rptr. 67].) A stay of the proceedings, with or without periodic court monitoring, would

ensure that Traweek receives a fair opportunity to have his case decided on its merits once the Finley Kumble bankruptcy is resolved.

 The involuntary dismissal of a civil case has potentially serious consequences for the citizen who has sought to redress his or her grievances in a court of law. It signifies the unfavorable termination of the lawsuit, a refusal to resolve the merits of the dispute. As we explained in *Moyal,* a court considering the dismissal of a case must have a substantial reason significant enough to overcome the legislative and judicial policy of this state that litigation should be disposed of "on the merits rather than on procedural grounds." (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; see *Moyal, supra,* 208 Cal.App.3d at p. 502.) Here the trial court's concern with administrative efficiency is insufficient justification for the dismissal of a plaintiff's case.

DISPOSITION

Judgments reversed. Appellants to recover their costs for this appeal.

Huffman, J., and Rodriguez, J.,\* concurred.

---

\*Judge of the Municipal Court for the San Diego Judicial District sitting under assignment by the Chairperson of the Judicial Council.