[No. B130931. Second Dist., Div. Four. Dec. 6, 1999.]

GARY H. PEARLSON, Plaintiff and Appellant, v.
DOES 1 TO 646, Defendants and Respondents.

**COUNSEL**

Gary H. Pearlson, in pro. per., for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

**OPINION**

**HASTINGS, J.**—Gary H. Pearlson, in propria persona, filed this appeal after the superior court dismissed his complaint. We affirm the judgment (order of dismissal).

### FACTUAL AND PROCEDURAL BACKGROUND

This is the second occasion we have had to revisit the viability of this action. As we explained in a prior opinion (*Pearlson v. Does 1 to 646* (July 24, 1998) B114452 [nonpub. opn.]), "This action was initiated by the filing of a verified complaint on November 22, 1996. Appellant Gary H. Pearlson

in propria persona, is the plaintiff, and named as defendants were Does 1 through 646. The complaint alleges various claims which are best summarized as claims for trespass and invasion of privacy throughout the counties of Los Angeles, Ventura, and San Diego and the city of Las Vegas, Nevada. These torts occurred at various locations which include commercial premises such as food stands, hotels, health clubs, flower shops, locksmiths, and bookstores, as well as public premises such as Dodger Stadium, parks, bike paths, beaches, piers and Marina Del Rey. These occurrences are alleged to have begun on October 1, 1987, and to have continued up through the date of filing. One of the specific examples of trespass alleges that 'on or about 12/1/93, defendants placed a foreign substance on plaintiff's coffee filter with the intent of distracting and disturbing the plaintiff during a law school entrance examination taken by the plaintiff on 12/2/93.' "

The action was initially dismissed by the trial court, Judge Bascue, on May 21, 1997, for failure to prosecute. Appellant appealed and we reversed the judgment of dismissal, remanding the matter to the trial court. The remittitur was issued on September 28, 1998.

Pursuant to appellant's request, a status conference was set to be heard in department 52 on December 3, 1998. On that date, the status conference was called in department 48 before Judge Ouderkirk. Appellant filed an ex parte application pursuant to Code of Civil Procedure section 2025, subdivision (b)(2), for "permission to apply for orders granting leave to serve nonparties with deposition subpoenas and notices of taking of depositions, prior to the service of the complaint on, or an appearance by, any defendant."[1] In this document, he requested permission to initiate discovery to learn the identities of the unnamed defendants in his complaint.[2] Because Judge Ouderkirk believed Judge Bascue was more familiar with the case, he transferred the matter to department 52 and rescheduled it for hearing on December 9, 1998.

On December 9th, Judge Bascue stated that he was unfamiliar with the provisions of section 2025 and expressed his desire to continue the matter so that he could research the issue. However, he advised appellant that if he determined the law did not allow him to grant the discovery requested he would consider dismissing the action. Appellant suggested a "two-step

---

[1]Code of Civil Procedure section 2025, subdivision (b)(2) provides: "The plaintiff may serve a deposition notice without leave of court on any date that is 20 days after the service of the summons on, or appearance by, any defendant. However, on motion with or without notice, the court, for good cause shown, may grant to a plaintiff leave to serve a deposition notice on an earlier date." All further references will be to the Code of Civil Procedure unless otherwise noted.

[2]Appellant filed a similar request on May 21, 1997, the date the trial court originally dismissed the action.

motion": first that he be allowed to take discovery, and then address the issue of service and dismissal. The court summarized its understanding of the issue presented as follows: "But I don't know—this is an active case. The problem here is really a service question, and if you're telling me that there is no way that you can reasonably determine who the parties are without leave of the Court granting you discovery authority, then the question really becomes—and I assume you've exhausted all reasonable remedies to discover[y] these people. The only thing left is are you entitled to the service and jurisdiction of the Court for discovery. If you're not, then there's no reasonable way you're going to find who the parties are to serve in this action. That's what I hear you saying, and that's what I read in your motion." After further discussion, the court set the matter for hearing on December 15, 1998, with the following admonition: "I just want to make sure that what we're going to do is we're going to set a hearing date, and I'm going to set an order to show cause why the matter should not be dismissed date. If I grant you the authority to take discovery, I will vacate the OSC and set another date out in the future to bring you back and see if you've been successful or not. . . ."

On December 15, the court concluded that appellant had failed to show good cause as required by section 2025, subdivision (b)(2), and denied appellant's request to conduct discovery. The court explained its reasoning as follows: "It is the Court's opinion in looking at C.C.P. 2025(b)(2), that that statute states that upon a showing of good cause, the power of the Court may be used. There's nothing in the statute to say that this section may be used to foray into the community with the power of the Court to find possible defendants. So it's not stated in the statute, and I'm making a finding you showed no good cause. . . . [¶] But let's assume that for sake of argument that Justice Kennard is right, that there may be an appropriate case where a plaintiff party can request of the Court and show good cause pursuant to this statute and utilize the jurisdiction of the Court to determine parties. . . .[3] [¶] If there were such authority, I would think that the complaint would have to be narrow. You may not know the specific name of the person, but if you had an identifiable subset or grouping limited by your complaint, it might lie. I'm not sure. I don't know. But taking Justice Kennard's dissent, I would think that it would only lie in unusual circumstances where—because what you're asking me to do is to grant you the jurisdiction, the power of this Court, to go into the community and use a deposition power of the Court unfettered without discretion. You would be, in essence, taking the power of the Court and be able to turn it and abuse it

---

[3]The reference is to Justice Kennard's dissent in *Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 945 [30 Cal.Rptr.2d 440, 873 P.2d 613], cited by appellant in his ex parte application.

on anyone you wished based upon the nature of your complaint. [¶] If your complaint more narrowly crafted and identified the subset, I would be less concerned, but just looking at the nature of the complaint—and I'm taking your complaint on its face. In other words, that what you say here is true, as I should in evaluating this motion. And I looked carefully at it to see if it was narrowed to events, time, places. But you don't." The court then set an order to show cause re dismissal for December 18, 1998.

On December 18th, the court stated to appellant that its tentative decision was to dismiss the case. Appellant requested more time to prepare and the matter was put over until January 28, 1999.

On January 28, 1999, after briefing by appellant and extensive argument, the court ruled: ". . . I'm taking the complaint on its face as being truthful. But in the complaint, you believe there are people out there surveilling you, following you, harassing you, putting foreign objects into your apartment, into your coffee. [¶] But there is absolutely no way for the court—a reviewing court to try and say this is limited to who that might be other than the entire population of the world perhaps. There are acts in San Diego, Ventura, Los Angeles, Orange, even Las Vegas, Nevada. [¶] . . . [¶] I'm finding no reasonable possibility that you would be able to serve anyone in this case. I have tried to follow the dictates of the Court of Appeal in this process. I've tried to walk a step-by-step process. I've gone through the complaint. But, again, there's no reasonable possibility or good cause for the court to not dismiss the matter. [¶] Pursuant to section 7.7 (a)(1) Local Rules and 583.150 Code of Civil Procedure and 68608 (b) Government Code, and C.C.P. 583.420(a)(1), this case is dismissed for lack of prosecution and failure to timely serve the parties within a reasonable period of time consistent with the other above rules. [¶] And the court finds no unusual circumstances for good cause shown to deviate from those standards. That is the order of the court. This case is dismissed." The minute order also reflects dismissal based on each of the statutes and local rules cited by the court in its oral statement from the bench.

### DISCUSSION

Appellant's brief raises numerous contentions, which can briefly be summarized as follows: (1) the two-year period for service of summons designated by section 583.420 had not yet elapsed; (2) the sixty-day period for service of summons set by local court rules should not apply to him for numerous reasons; and (3) the court erred in imposing the ultimate sanction of dismissal.

We agree with appellant that the case was not ripe for dismissal pursuant to section 583.420. The superior court dismissed the case on May 21, 1997,

losing jurisdiction, and only regained jurisdiction upon issuance of the remittitur on September 28, 1998. Thus the case had technically only been on file for ten months (six months plus four months) when the second dismissal order was entered on January 28, 1999. (§ 583.340; *Fannin Corp.* v. *Superior Court* (1974) 36 Cal.App.3d 745, 750 [111 Cal.Rptr. 920].)

We also agree that the local rule requiring service within 60 days and return of process within 90 days may conflict with section 474 and the 3-year statute allowing a plaintiff to amend and add Doe defendants.[4] (§ 583.210, see *Bernson* v. *Browning-Ferris Industries*, *supra*, 7 Cal.4th at p. 932.) However, we need not reach the issue.

The court also cited section 583.150 as basis for dismissal. That section provides: "This chapter does not limit or affect the authority of a court to dismiss an action or impose other sanctions under a rule adopted by the court pursuant to Section 575.1 [for pretrial conferences in civil cases] or by the Judicial Council pursuant to statute *or otherwise under inherent authority of the court.*" (Italics added.)

Section 583.150 was enacted in 1984. However, prior to its enactment, the inherent discretionary power of the court to dismiss an action had been recognized: "In the absence of express statutory authority, a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice. [Citation.] However, this power has in the past been confined to two types of situations: (1) the plaintiff has failed to prosecute diligently [citation]; or (2) *the complaint has been shown to be 'fictitious or sham' such that plaintiff has no valid cause of action.* [Citation.]" (*Lyons* v. *Wickhorst* (1986) 42 Cal.3d 911, 915 [231 Cal.Rptr. 738, 727 P.2d 1019], italics added.) We deal with the second situation.

Here, no defendants were named in the complaint, only fictitious defendants pursuant to section 474. While such a pleading is legally permissible, the fact that appellant cannot identify even one potential defendant in connection with allegations of nefarious conduct relating back to October 1, 1987, raises a significant question regarding the viability of the claims alleged. The trial court so noted. It then turned its attention to appellant's request to undertake discovery and sought to determine whether good cause was shown to sanction the court's intervention. It concluded in the negative and set a hearing to determine whether the action should be dismissed. The matter was continued to January 28 to give appellant further time to respond.

---

[4]As pertinent, that section 474 provides: "When a plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly. . . ."

At the January 28th hearing, appellant made the following statement to the court: "[M]y intention in writing the complaint was sort of based on the beginning hypothesis that someone had—was either shadowing me or had hired someone to do it. And so what I did and the purpose of doing this was to—I expected that eventually possibly these people might come to see the complaint, and I wanted to make sure that they were put on notice. [¶] . . . [I]f you were to limit me to one person and one interrogatory, I could be so specific as to tell you who that person is and what that interrogatory is. [¶] . . . [¶] Now, this is a person—I can't prove that this is the person who's doing it. But I think that that person's deposition should be taken. I think that's a person that we can hone in on."⁵

Notwithstanding appellant's claim that he could identify a specific person, he did not do so. Nor did he advise the court how *any* person may be connected with the various allegations of the complaint.

At oral argument, we focused on this issue and inquired how appellant could utilize discovery to determine who may be responsible for the alleged wrongdoing. Appellant gave us three potential sources. First, he speculated that information may have turned up during the investigation conducted by the California State Bar into appellant's character and background to practice law. Second, he said that two faculty members from his former law school *may* have information helpful on the issue. Finally, he suggested that it may be a person with whom he has already been involved in litigation. As with the trial court, appellant failed to specifically identify a particular person and we were given no specific information to demonstrate that appellant's requested discovery was anything other than a fishing expedition. We agree with the trial court that no good cause was demonstrated to support issuance of an order pursuant to section 2025, subdivision (b)(2).

---

⁵Appellant went on to explain the genesis of his complaint as follows: "First of all, this happened the morning of my L.S.A.T. This is how I found it. I hope I can explain it properly. It wasn't in my coffee. I have a coffee filter. It's the permanent kind. It's a cone shape like this. [¶] . . . [¶] Now, that morning, I looked over there, and there was a tiny little piece of plastic on this cone. Now, I know that sounds strange, and that's part of the reason that this person did it. They could have come into my apartment, and they could have, you know, busted in my television or drawn a swastika on the wall to hurt me during my test. [¶] My test, I had to cancel it. . . . And I had to delay my law school education for a year. . . . [T]here is no way that that little piece of plastic could be on there. If it falls, it drops. It had to have been placed. [¶] And there are other events, I mean, that I could tell you about. . . . [¶] Then it came to a point where I saw—was sure because I saw people, and I saw them move away as I moved forward. So I'm saying, again, you know, I hope I haven't made a mistake in drafting the complaint and being so broad. [¶] . . . [¶] If you were to ask me what happened exactly here, you know, I couldn't tell you because maybe I just don't remember or maybe I'm not absolutely sure. . . . Because the purpose is not just to surveil me, if you read the complaint, but it's to invade my privacy and make public private facts. And this is not the first defamation case I've filed."

As we noted in our prior opinion, a superior court should only utilize dismissal as a sanction where no other reasonable sanction is available. (*Traweek* v. *Finley, Kumble, etc. Myerson & Casey* (1991) 235 Cal.App.3d 1128, 1134 [1 Cal.Rptr.2d 185], quoting *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 503 [256 Cal.Rptr. 296].) Based on appellant's failure to demonstrate that he has any significant potential to determine the identity of a viable defendant, we conclude the trial court did not err in dismissing the action.

## DISPOSITION

The judgment (order of dismissal) is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied December 27, 1999, and appellant's petition for review by the Supreme Court was denied March 15, 2000.