Filed 12/31/15 Conservatorship of P.S. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| Conservatorship of the Person of P.S. _____ <br><br> M.S., as Conservator, etc., <br><br>       Petitioner and Appellant, <br><br>   v. <br><br> P.S., <br><br>       Objector and Respondent. | B251865 <br><br> (Los Angeles County <br> Super. Ct. No. BP144498) |

APPEAL from an order of the Superior Court of Los Angeles County. Lesley C. Green, Judge. Affirmed.

M.S., in pro. per., for Petitioner and Appellant.

Barry P. Goldberg, A Professional Law Corporation, Barry P. Goldberg, and Matthew S. Erickson for Objector and Respondent.

M.S. filed a petition requesting the court to appoint his wife, F.S., and him conservators of their son, P.S. While that petition was pending, M.S. filed a petition to appoint F.S. and him as P.S.'s temporary conservators. At the hearing on the petition for temporary conservatorship, the trial court denied both petitions with prejudice. M.S. appealed. He contends that the court denied him due process, failed to consider evidence, and should not have denied the petitions with prejudice.

Because the court reasonably concluded that the petitions were meritless attempts to prevent P.S.'s impending wedding, its orders were valid exercises of the court's inherent authority to dismiss sham, frivolous, or vexatious petitions. We therefore affirm.

### FACTUAL AND PROCEDURAL SUMMARY

In 2013, P.S. was a 28-year-old employed engineer. He was to be married on October 5, 2013.

About six weeks before the wedding date, M.S. filed a petition for appointment of a conservator of the person of P.S. M.S. alleged that P.S. is "unable to properly provide for his . . . personal needs for physical health, food, clothing, or shelter." More particularly, P.S. allegedly "is not able to maintain a clean living environment. He cannot make medical decisions. He does not know the date and time of day. He gets confused easily. He fails to recognize familiar people. He does not perceive or appreciate danger. He cannot use public transportation." M.S. further alleged that P.S. does not have the capacity to give informed consent to any form of medical treatment. M.S. sought an order that P.S. "be adjudged to lack the capacity to give informed consent for medical treatment," and that F.S. and he be appointed P.S.'s conservators.

In support of the petition, M.S. submitted a declaration by Dr. Farshid Rahbar, a gastroenterologist who has examined P.S. concerning P.S.'s inflammatory bowel disease (IBD or Crohn's Disease). Dr. Rahbar last saw P.S. in November 2011—21 months prior to M.S's petition.

Dr. Rahbar made his declaration on Judicial Council Form, GC-335 (Rev. Jan. 1, 2009), titled, "Capacity Declaration—Conservatorship." The form calls for the declaring physician to evaluate various mental abilities of the proposed conservatee and assign a

2

level of impairment to each ability.[1]  Dr. Rahbar indicated that P.S. has no impairment with respect to 17 out of 19 mental abilities.  Dr. Rahbar perceived moderate impairment of two abilities due to "stress":  (1) the ability to attend and concentrate; and (2) the ability to plan, organize, and carry out action in one's own rational self-interest.

The form also calls for the physician to state any opinion regarding the proposed conservatee's mood state.  Dr. Rahbar indicated that P.S. has a "mildly inappropriate" level of anxiety and a "severely inappropriate" level of hopelessness.  He expressed no opinion regarding the listed mood states of anger, fear, panic, euphoria, depression, despair, helplessness, apathy, or indifference.  Finally, Dr. Rahbar opined that P.S. "has the capacity to give informed consent to any form of medical treatment."

Dr. Rahbar attached a letter to his declaration in which he stated that P.S. has not kept appointments or agreements with his office, and has not returned telephone calls to follow up with treatment for his IBD.  Dr. Rahbar expressed concern about P.S.'s "possible lack of understanding that unsupervised cessation of his medications may cause a 'flare' of his IBD, which may put him in a situation that he would require urgent attention and possible hospitalization."  He was also concerned about P.S.'s ability to handle stress and the effect of stress on P.S.'s IBD.  Finally, he noted that F.S. has expressed to him her "extreme concern about [P.S.'s] physical and mental well being, and [his] current living situation with a significant other."  Dr. Rahbar concluded, however, that he "does not have a[ny] proof" to support F.S.'s statements.

The court set the hearing on M.S.'s petition for October 9, 2013.  That would have been four days after P.S.'s wedding date.

On September 10, 2013, two weeks after he filed the original petition, M.S. filed a petition for appointment of temporary conservators of the person of P.S., again seeking to have F.S. and himself appointed as conservators.  The temporary petition was based on

---

[1]     The form calls for the physician to rate the patient's level of impairment on an "a" through "d" scale where "a" indicates "no apparent impairment," "b" indicates "moderate impairment," "c" indicates "major impairment," and "d" indicates "so impaired as to be incapable of being assessed."  The physician may also select "e" to indicate: "no opinion."

3

the allegation that M.S. and F.S. "are afraid that [P.S.] is going to marry a dangerous woman and also would like access to his doctor and medical records because they fear that he is not taking his medications properly." The petition was supported by the same documents filed in support of the original conservatorship. The court set a hearing on the temporary petition for September 19, 2013, about two weeks before P.S.'s wedding date.

At the September 19 hearing on the temporary petition, M.S. appeared without counsel; P.S. was present and represented by counsel. F.S. was present as was P.S.'s fiancée.[2]

The court noted it had reviewed a report regarding the case by a probate volunteer panel (PVP) and commented that P.S. is 28 years old, an engineer, employed full time, and that he "looks perfectly fine."[3] P.S.'s attorney told the court that P.S. is "a highly competent individual" and "a supervising engineer for a very top company." He argued that the petition is an attempt to stop P.S.'s wedding and an abuse of process.

After the court indicated that there was no basis for a conservatorship, F.S. told the court that she needed to get a "court order for his mental [sic]," and indicated that she had other evidence.[4] When the court asked what evidence she had, she responded: "Okay. Bottom line is, for his Crohn['s] Disease, you already call an attorney. He has—his evaluation about his Crohn['s], but for recent, recent Crohn['s] condition, which he has

---

[2]     The court denied F.S.'s request to have P.S.'s fiancée excluded from the courtroom.

[3]     Although the PVP report was filed with the trial court, M.S. did not designate the report for the record on appeal and it is not included in our record. A minute order in our record indicates that the author of the PVP report concluded that the evidence is insufficient to establish that P.S. is incapacitated and requires a conservatorship, and that there is insufficient evidence or information to establish the necessity for a temporary conservatorship.

[4]     M.S. was the petitioner and represented himself in pro. per. Although F.S. was neither a petitioner nor an attorney, she was permitted to argue the petitioner's case. M.S. spoke only to announce his presence.

After M.S. appealed, he requested that F.S. be included as an appellant in this case. We denied the request on June 30, 2014.

4

been over, and I hire investigator and I do know who is the name of the—actually, his physician, I'm going to bring for you evidence.  I need a court order for that one.  I need a court order for the—actually, if they don't get married right now, I want a court order [to] stop this marriage October 5th, if still they don't get married . . . ."

After further argument, the court informed M.S. and F.S.:  "There is no basis whatsoever for this petition.  [P.S.] is an adult.  You may not agree with his decision, but that's what happens when we're parents and our kids grow up."

F.S. responded:  "All of us here are adult here if you have enough mental balance. . . .  My son entered this relationship.  He has not enough mental balance."  The court concluded by telling F.S.:  "I'm sorry you have this view of your child.  I am sorry that there's this break in your relationship with your child.  But there is absolutely no reason to bring this motion."

Upon the request of P.S.'s attorney, the court dismissed with prejudice the petition for temporary conservators and the pending original petition for conservators.  M.S. appealed.[5]

## DISCUSSION

A relative, among other persons, may petition a court to appoint a conservator "for a person who is unable to provide properly for his or her personal needs for physical health, food, clothing, or shelter."  (Prob. Code, §§ 1801, subd. (a), 1820, subd. (a)(3).)[6] The petitioner must establish the need for a conservatorship by clear and convincing evidence.  (§ 1801, subd. (e).)

---

[5]     The denial of the original petition for a conservatorship is appealable. (Prob. Code, § 1301, subd. (a) [an order granting or refusing to grant letters of conservatorship is appealable]; cf. *Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 485 [an order granting guardianship is appealable even though letters of guardianship were never sought or obtained]; but see Cal. Conservatorship Practice (Cont.Ed.Bar 2015) § 5.89, p. 5-97 [an order establishing conservatorship is appealable, but not a decision denying a petition for conservatorship].)  The order denying the petition for a temporary conservator is not appealable.  (Prob. Code, § 1301.)

[6]     All subsequent statutory references are to the Probate Code unless otherwise indicated.

5

If the court grants the petition, the conservator is generally given "the care, custody, and control of" the conservatee and may determine where the conservatee lives. (§§ 2351, subd. (a), 2352, subd. (b).) If the court determines that the conservatee lacks the capacity to make health care decisions, the conservator is given exclusive authority to make such decisions and "may require the conservatee to receive the health care, whether or not the conservatee objects." (§ 2355, subd. (a).)

While the petition for a conservator is pending, the court may, upon a showing of good cause, appoint a temporary conservator. (§ 2250, subd. (a)(2).) A temporary conservator is appropriate "when immediate intervention is required to ensure the proposed conservatee's well-being . . . until there is a final determination on a petition for appointment of a general conservator." (Cal. Conservatorship Practice, supra, § 6.1, p. 6-3.) The determination of "good cause depends largely upon the circumstances of each case" (*Conservatorship of Gray* (1970) 12 Cal.App.3d 513, 521) and "hinges on compelling documentary or other evidence of the need for a temporary conservatorship." (Cal. Conservatorship Practice, *supra*, § 6.2, p. 6-6.)

Except where the Probate Code provides otherwise, "the rules of practice applicable to civil actions, including discovery proceedings . . . apply to, and constitute the rules of practice in, proceedings under [the Probate C]ode. All issues of fact joined in probate proceedings shall be tried in conformity with the rules of practice in civil actions." (§ 1000.) More particularly, section 1827 provides that "the court shall hear and determine the matter of the establishment of the conservatorship according to the law and procedure relating to the trial of civil actions, including trial by jury if demanded by the proposed conservatee."

The law and procedure relating to the trial of civil actions includes the court's inherent authority to dismiss an action that is a sham, frivolous, or wholly vexatious. (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 758-759, 762-763 (*Stephen Slesinger*); *Pearlson v. Does 1 To 646* (1999) 76 Cal.App.4th 1005, 1010; *Muller v. Tanner* (1969) 2 Cal.App.3d 438, 443; *Estate of King* (1953) 121 Cal.App.2d 765, 774; see generally 6 Witkin, California Procedure, Proceedings

6

Without Trial (5th ed. 2008) § 282, p. 735; 1A Cal.Jur.3d (2014) Actions § 404, p. 511.) The court will exercise this authority to prevent the harassment of defendants and ensure that the court's process is used for "'the single purpose for which it is intended—the adjudication of bona fide controversies.'" (*Estate of King*, *supra*, at p. 775, quoting *Pueblo De Taos v. Archuleta* (10th Cir. 1933) 64 F.2d 807, 813; *Stephen Slesinger*, *supra*, at pp. 758-759.) Derived from the court's historical powers in equity, dismissing an action under this power does not violate a plaintiff's right to trial "any more than when the court upholds other defenses in equity that defeat the plaintiff's lawsuit." (*Id.* at p. 763.)

Although the probate court did not expressly refer to such inherent authority, it is apparent from the court's comment that "[t]here is no basis whatsoever for this petition" and its understanding that the petitions were an attempt to stop P.S.'s wedding, that the court invoked this power. In any event, we review the correctness of the court's ruling, not its rationale, and will affirm the ruling if it is "correct on any theory of applicable law." (*Sehulster Tunnels/Pre-Con v. Traylor Brothers, Inc./Obayashi Corp.* (2003) 111 Cal.App.4th 1328, 1340.)

Here, the record supports the court's dismissal of M.S.'s petitions under its inherent power. At the time of the hearing on the temporary petition, P.S. was a 28-year-old, fully-employed engineer, who "look[ed] perfectly fine," and was engaged to be married. M.S. offered no evidence, and made no offer of proof, to support M.S.'s allegations that P.S. is unable to maintain a clean living environment, cannot make medical decisions, fails to recognize familiar people, does not perceive or appreciate danger, and cannot use public transportation. Although Dr. Rahbar, a gastroenterologist, had treated P.S. for Crohn's Disease, P.S. had not seen Dr. Rahbar for almost two years. Moreover, Dr. Rahbar's declaration, which indicates that P.S. experiences stress, anxiety, and hopelessness, does not suggest that P.S. was "unable to provide properly for his . . . personal needs for physical health, food, clothing, or shelter." (§ 1801.) Indeed, contrary to M.S.'s allegation in the original petition, Dr. Rahbar opined that P.S. "*has* the capacity to give informed consent to any form of medical treatment." (Italics added.)

7

After the court set the hearing on the original petition to take place after P.S.'s wedding, M.S. filed the petition for a temporary conservator. Because a petition for a temporary conservator requires only five days notice, it could be heard and decided before P.S.'s wedding. (See § 2250, subd. (e).) The alleged grounds for the temporary conservatorship are that M.S. and F.S. "would like access to [P.S.'s] doctor and medical records because they fear that he is not taking his medications properly" and that they "are afraid that [P.S.] is going to marry a dangerous woman."

It does not appear from our record that there was any need to obtain P.S.'s medical records prior to the hearing on the pending original petition, if at all. The only other justification for the court's "immediate intervention" was to stop P.S. from marrying his fiancée. (Cal. Conservatorship Practice, *supra*, § 6.1, p. 6-3.) The court could reasonably conclude that this justification was wholly meritless and an abuse of the conservatorship proceedings.

The record of the hearing on the temporary petition further indicates M.S.'s improper purpose in bringing the petitions. When the court asked F.S. what additional evidence she had to support the petition, she identified nothing; instead, she referred vaguely to P.S.'s Crohn's Disease and the need for a court order to obtain evidence from P.S.'s doctor, then stated: "I want a court order [to] stop this marriage October 5th." When P.S's counsel subsequently asserted that the proceeding was "an attempt to stop this marriage, which is on October 5th," F.S. did not disagree, responding: "October 5th, yes."

Viewed in its entirety, the record supports the conclusion that the petitions were a meritless attempt to use the conservatorship proceedings for the improper purpose of preventing P.S.'s wedding. The court acted within its inherent authority to dismiss the action in order to prevent any further misuse of the judicial system.

We reject M.S.'s argument that the failure to provide him with a further evidentiary hearing or trial deprived him of due process. The determination of whether a procedure violates one's right to due process under the federal constitution requires consideration of three factors: "First, the private interest that will be affected by the

8

official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge* (1976) 424 U.S. 319, 334-335.) The determination under our state constitution requires consideration of a fourth factor: """"the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official."" [Citations.]" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 213.)

Assuming that M.S. has a constitutionally protected interest to be appointed conservator of his son in an appropriate case, M.S. was provided with an adequate opportunity to vindicate that interest at the hearing on the temporary petition. The same evidence that might support a permanent conservatorship was presented by F.S. and him at the hearing on the temporary conservatorship. Further, the additional evidence that F.S. proposed to provide was no stronger than the evidence the parents had already provided. The denial of a further hearing thus posed little "risk of an erroneous deprivation" of any protected right. (See *Mathews v. Eldridge*, *supra*, 424 U.S. at p. 335.) Lastly, the judiciary has a strong interest in avoiding abuses of its processes, preventing harassment of defendants, and preserving the integrity of conservatorship proceedings.

M.S. also contends that the court did not appear to consider the allegations and evidence in support of M.S.'s petition. Nothing in the record supports this contention. Indeed, the court's comments suggest otherwise. Moreover, even assuming that the court did not consider all the evidence, M.S. has not shown any prejudice because the evidence in the record is insufficient to support the granting of either a temporary or permanent conservatorship.

Finally, M.S. contends that the court erred by dismissing the petitions with prejudice. He cites section 581 of the Code of Civil Procedure (§ 581), which provides

that the court may dismiss an action with prejudice upon (1) written request of a plaintiff or (2) the consent of the parties.  (§ 581, subds. (b)(1) & (b)(2).)  He contends that his petition may be dismissed with prejudice "only" under these two circumstances. He is incorrect.  Subdivision (m) of section 581 provides that "[t]he provisions of this section shall not be deemed to be an exclusive enumeration of the court's power to dismiss an action or dismiss a complaint as to a defendant."  And, as discussed above, section 583.150 of the Code of Civil Procedure further provides that "[t]his chapter [which includes section 581] does not limit or affect the authority of a court to dismiss an action or impose other sanctions . . . under inherent authority of the court."[7]

## DISPOSITION

The order denying the petition for conservatorship is affirmed.  Respondent P.S. is awarded his costs on appeal.

NOT TO BE PUBLISHED.



ROTHSCHILD, P. J.

We concur:



CHANEY, J.



LUI, J.

---

[7]     M.S.'s reply brief consists of factual statements without any citation to the record and arguments unsupported by any legal authority.  We do not, therefore, address the assertions made therein.  (See *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133,1149 [court may disregard statements of fact unsupported by citations to the record]; *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413 [court need not consider legal arguments made without citation to authority].)

10